Filed 10/1/13  P. v. Nguyen CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JEFF D. NGUYEN,<br><br>    Defendant and Appellant. | A133852<br><br>(San Francisco City & County<br>Super. Ct. No. 212655) |

Jeff D. Nguyen was convicted, by a jury, of the first degree murder (Pen. Code, § 187, subd. (a))[1] of his wife, Mai Banh.  The jury also found "true" allegations that Nguyen personally used a deadly weapon (§ 12022, subd. (b)(1)).  Nguyen appeals, contending that his murder conviction should be reversed because:  (1) the trial court erroneously failed to properly answer the jury's question regarding premeditation during deliberations; and (2) his trial counsel was ineffective for failing to object to the court's response to the jury and to the prosecutor's misstatement of the law on provocation during closing argument.  We affirm.

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

1

# I.    FACTUAL AND PROCEDURAL BACKGROUND

## Prosecution Case

### Ngoc Banh's Testimony

Ngoc[2] testified that her sister, Mai, and Nguyen had two sons.  Ngoc knew that Nguyen and Mai had discussed divorce, but were trying to work things out.  Mai told Ngoc that Nguyen wanted to stay married but Mai did not.

Mai worked seven days a week at her hair salon.  In April 2007, Mai and her children were staying with Ngoc during spring break.  On Saturday, April 14, 2007, Mai left for work, taking her white purse, and leaving her sons in Ngoc's care.  At 8:00 p.m., Nguyen came by to pick up the two boys.  The next day, around 6:00 p.m., Nguyen called Ngoc and asked if Mai was there.

### Duc Truong's Testimony

Duc Truong is married to Ngoc Banh.   On the evening of Sunday, April 15, 2007, Truong spoke to Nguyen, who said that Mai was missing.  Truong called the San Leandro police.  Truong and Ngoc traveled to Mai's hair salon and found it locked and the lights off.  They also found Mai's car parked outside.  Truong called Nguyen.  When Truong said he was at Mai's salon, Nguyen said he was on his way.  When Nguyen arrived at the salon, he asked Truong who had accompanied him.  Nguyen then opened the salon with a key.  Nguyen entered first and went directly to the back.  Truong followed and found Mai, lifeless, on the floor.  Truong called 911.  Nguyen appeared relieved.

### Hoogasian's Testimony

Nguyen made Mai's funeral arrangements with Michael Hoogasian.  Hoogasian said that Nguyen seemed "[l]ike it was no big deal, like he was just coming in to talk to someone."  Nguyen's primary concern was cost.  When he was informed that a government program might assist with the funeral costs, Nguyen asked about receiving any overage, saying, "I deserve it.  I am the one that needs the money.  I want that

---

[2] Because the victim and her sister, Ngoc Banh, share the same last name, we will refer to each by first name only.  No disrespect is intended.

money." Nguyen did not appear interested in the funeral services, telling Hoogasian that he "had more important things to do."

*Dominic Canicosa's Testimony*

In November 2005, Dominic Canicosa served Nguyen with papers noticing a suit for divorce. On cross-examination, Canicosa testified that Nguyen was calm when served.

*Police Investigation*

Officer Jason Fletcher, of the San Leandro Police Department, testified that on April 15, 2007, at approximately 7:00 p.m., he responded to Nguyen's home to investigate a missing person. Nguyen was "[v]ery, very calm." He had red hands, as if they had been sunburned or recently submerged under hot water. Nguyen reported that he became concerned when Mai did not return home from a party earlier that morning. Nguyen said that he last saw Mai the previous day, at 6:30 p.m., at her salon. Fletcher repeatedly told Nguyen to contact San Francisco police before moving Mai's vehicle or entering the salon.

On April 15, 2007, at approximately 10:00 p.m., the San Francisco Police Department responded to the hair salon. A body was found in the bathroom of the back room. There was no sign of a struggle.

On April 16, 2007, Nguyen was interviewed by San Francisco police. Nguyen said that, on April 14, Mai gave him a haircut, at the salon, around 6:45 p.m. Nguyen denied any involvement in Mai's death and theorized that she had been robbed and killed. Nguyen exhibited a "flat" demeanor throughout the interview.

On April 25, 2007, a search was conducted at Mai's and Nguyen's home, in San Leandro. A white purse was found, inside a Macy's plastic bag, at the bottom of a clothes hamper. The purse contained keys to the salon and Mai's car. A claw hammer was found on the floor, between the wall and the washing machine.

Nguyen was arrested and interviewed again. Initially, Nguyen continued to deny any involvement. But, Nguyen told police that the couple's marriage began to fray after he accumulated a gambling debt. Nguyen signed quit claim deeds, giving Mai his rights

3

to the family home and property in Sacramento, in exchange for a promise that Mai would clear his debts. The couple also argued about child rearing.

Eventually, Nguyen confessed to the killing. Nguyen said: "I killed her because I was so angry. That night . . . she was coming out with . . . her boyfriend. . . . We . . . [were] going to get a divorce . . . . I just couldn't help, you know, I work hard for my life, you know, I—I made one mistake—gambling . . . . But I couldn't pay up, my debt, you know. All I wanted to do was just take care of my son, be with my son. She told me she's gonna take all that . . . away from me. That's why I got so mad and I couldn't control my . . . [unintelligible] moment—and I did a terrible thing . . . now I am paying for it. . . . [¶] . . . [¶] I . . . was so angry, so I beat her with the hammer on her head."

Nguyen told Mai, "you're getting . . . married again, and you know, took everything away from me." Mai said "no." Nguyen became angry and wanted to beat her. The toilet paper holder, in the bathroom, had come loose. They both went into the bathroom. Nguyen had a hammer from the salon. Nguyen asked Mai to show him where, on the wall, she wanted the toilet paper holder. When she turned around, he began hitting her, in the back of the head, with the hammer. Nguyen said that "[he] was crazy at the time" and could not remember how many times he hit her. He also said: "I was very mad. I can't control myself . . . ." But, he also explained: "It was a lot of anger built up in me . . . all these years, and then I just at that moment . . . when she told me she . . . filing a divorce and getting married, that's when I got . . . so upset."[3]

Nguyen described the attack:

"A: But at first [I] hit her . . . on the head.

"Q: Mmm-hmm.

"A: And I remember she tried—she reaches her hand up tried to cover her head—

"Q: Mmm-hmm.

"A: —I—but I hit her again. Nothing I hit her . . . couple of more times she fell down on the sides of the toilet when, uh, when you were facing the toilet she was falling

---

[3] This was the first time Nguyen learned that Mai was dating someone else.

. . . on the left. I hit her few times on that. Then after that I see . . . some little bit of blood on my hand, not much, and I washed it, and I walked away. I took her purse and I walked away. I locked the door and I walked away. But when I came back on Sunday I saw her laid on this way on this side—

"Q: Uh-huh.

"A: —and blood's everywhere.

"Q: Uh-huh.

"A: So when I left her there she didn't die right away."

After the conclusion of the interview, Nguyen led police to Lake Merritt where he allegedly threw the hammer and Mai's cell phone into the water. Divers looked repeatedly, but turned up nothing.

*Forensic Evidence*

A forensic pathologist testified that bruises were found on Mai's armpit, right palm, right arm, back of the right hand, left palm, back of the left hand, and right ankle. The pathologist also found bruises on Mai's right forehead, tears to the back, sides, and top of the head, tears to the back of the neck and behind her right ear, and a bruise on the right side of her face. Mai suffered approximately 10 separate head wounds and "a lot" of skull fractures. Some of the wounds were consistent with blows from a hammer. The pathologist opined that Mai died from blunt force injuries to her head. A depression in Mai's skull was compared with a valve knob in the bathroom at the salon. The depression in the skull was similar in shape to the valve.

A criminalist found portions of the recovered hammer that tested presumptively positive for blood. DNA was found, but not enough to produce a full DNA profile.

Defense Case

Nguyen did not present any witnesses.

Instructions and Verdict

The jury was instructed on first and second degree murder, as well as voluntary manslaughter. The prosecution's theory of the case was that Nguyen was guilty of first degree, deliberate and premeditated, murder because he decided to kill Mai in advance,

5

out of resentment, lured her to the bathroom, and then left her to die. Nguyen did not dispute having killed Mai, but argued that he was guilty of only voluntary manslaughter because he did so in a sudden fit of rage.

Nguyen was convicted of first degree murder. The jury also found the weapon-use allegation true. He was sentenced to state prison for a total term of 26 years to life. He filed a timely notice of appeal.

## II.    DISCUSSION

Nguyen does not dispute that he killed Mai. However, Nguyen contends that his first degree murder conviction should be reversed because: (1) the trial court erroneously failed to properly answer the jury's question during deliberations regarding premeditation; and (2) his trial counsel was ineffective for failing to object to the prosecutor's misstatement of the law on provocation during closing argument. Neither of Nguyen's arguments is persuasive.

A.    *Instructional Issue*

While arguing that the evidence would better support a conviction for voluntary manslaughter, Nguyen does not challenge the sufficiency of the evidence to support his conviction of first degree murder. Rather, he contends the trial court erred in responding to a jury question about the requisite elements of deliberation and premeditation.

"A murder that is willful, deliberate, and premeditated is murder in the first degree. (§ 189.) ' "A verdict of deliberate and premeditated first degree murder requires more than a showing of intent to kill. [Citation.] 'Deliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation' means thought over in advance. [Citations.] 'The process of premeditation and deliberation does not require any extended period of time. "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly. . . ." [Citations.]' " [Citation.]' [Citation.] [¶] ' "Generally, there are three categories of evidence that are sufficient to sustain a premeditated and deliberate murder: evidence of planning, motive, and method. [Citations.] . . . But these categories of evidence, borrowed from *People v. Anderson*

6

(1968) 70 Cal.2d 15, 26–27, 'are descriptive, not normative.' [Citation.] They are simply an 'aid [for] reviewing courts in assessing whether the evidence is supportive of an inference that the killing was the result of preexisting reflection and weighing of considerations rather than mere unconsidered or rash impulse.' [Citation.]" [Citation.]' [Citation.]" (*People v. Booker* (2011) 51 Cal.4th 141, 172–173, parallel citation omitted.)

### 1. *Background*

In accordance with the above principles, the jury was instructed, pursuant to CALCRIM No. 521: "If you decide that the defendant has committed murder, you must decide whether it is murder of the first or second degree. [¶] Deliberation and Premeditation [¶] The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. The defendant acted willfully if he intended to kill. *The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before completing the act that caused death.* [¶] The length of time the person spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated. The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances. *A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated.* On the other hand, a cold, calculated decision to kill can be reached quickly. The test is the extent of the reflection, not the length of time. [¶] All other murders are of the second degree. [¶] The People have the burden of proving beyond a reasonable doubt that the killing was first degree murder rather than a lesser crime. If the People have not met this burden, you must find the defendant not guilty of first degree murder." (Italics added.)

During deliberations, the jury sent the court a written note asking: "In the definition of 'deliberately,' must the decision to kill be made before the commencement of action, or if the decision was made before the acts were completed, is that still considered deliberate?" Upon receiving the note, the trial court apparently consulted with counsel, although that discussion is not reported. Ultimately, the trial court

7

responded to the request "by agreement of the parties," with a written instruction to "[r]eread instruction CALCRIM 521."

2. *Analysis*

Nguyen argues that the trial court violated its instructional duty, under section 1138, and Nguyen's due process rights by failing to further clarify the definitions of deliberation and premeditation provided by CALCRIM No. 521. Nguyen concedes that CALCRIM No. 521 constituted a correct statement of the law, but nonetheless maintains that "the jury may have convicted [him] of first-degree murder without determining that he had carefully weighed the considerations for and against the killing before deciding to kill."

There is no evidence in the record that Nguyen's trial counsel raised this contention below. "When a trial court decides to respond to a jury's note, counsel's silence waives any objection under section 1138. [Citation.]" (*People v. Roldan* (2005) 35 Cal.4th 646, 729, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, & fn. 22.) The record in fact indicates that the court's response was with defense counsel's agreement. But even if we were to assume that the claim was not forfeited, Nguyen's argument fails on the merits.[4]

Section 1138 imposes "a mandatory 'duty to clear up any instructional confusion expressed by the jury.' "[5] (*People v. Moore* (1996) 44 Cal.App.4th 1323, 1331, quoting *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1212, superseded by statute on another point as stated in *In re Steele* (2004) 32 Cal.4th 682, 690.) "This does not mean the court must always elaborate on the standard instructions. Where the original instructions are

---

[4] In the alternative, we would reach the issue based on Nguyen's assertion that his trial counsel's agreement to the response constituted ineffective assistance of counsel.

[5] Section 1138 provides: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."

themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. [Citation.] Indeed, comments diverging from the standard are often risky. [Citation.] . . . But a court must do more than figuratively throw up its hands and tell the jury it cannot help. It must at least *consider* how it can best aid the jury. It should decide as to each jury question whether further explanation is desirable, or whether it should merely reiterate the instructions already given." (*People v. Beardslee* (1991) 53 Cal.3d 68, 97.) We review for abuse of discretion. (*People v. Hodges* (2013) 213 Cal.App.4th 531, 539.)

We agree with the People that the trial court fulfilled its duty, under section 1138, by directing the jury to CALCRIM No. 521, which contains the definitions of deliberation and premeditation. When the jury instructions already given are complete and accurate, the trial court does not necessarily abuse its discretion by advising the jury to reread such instructions. (*People v. Gonzalez, supra,* 51 Cal.3d at p. 1213; *People v. Montero* (2007) 155 Cal.App.4th 1170, 1179–1180; *People v. Moore, supra,* 44 Cal.App.4th at p. 1331.)

Nguyen's reliance on *People v. Loza* (2012) 207 Cal.App.4th 332 (*Loza*), does not convince us to reach a contrary conclusion. *Loza* was a murder case in which the jury was instructed that a person who aided and abetted another to commit a crime is "equally guilty" of that crime. (*Id.* at p. 348.) On appeal, one defendant argued that, in response to the jury's questions regarding the intent required for aider and abettor liability, the trial court failed to adequately clarify its instructions when it simply referred the jury back to the original instruction. The reviewing court concluded that trial counsel's failure to object to the court's response constituted prejudicial ineffectiveness. (*Id.* at pp. 336, 349, 355–357.)

The reviewing court noted: "Although it is generally true that 'a person who is found to have aided another person to commit a crime is "equally guilty" of that crime' [citation], 'in certain cases, an aider may be found guilty of a greater or lesser crime than the perpetrator. [Citations.]' [Citation.] . . . [¶] Because an aider and abettor's mental state 'floats free' from that of the direct perpetrator's, at least two courts have concluded

9

that in certain circumstances, the 'equally guilty' language found in [former] CALCRIM No. 400 . . . , can be misleading by suggesting to the jury that it may not find an aider and abettor to be guilty of a lesser offense from that of the direct perpetrator. [Citations.]" (*Loza, supra,* 207 Cal.App.4th at pp. 351–352.) Thus, because the jury specifically inquired whether it should consider the state of mind of an aider and abettor, and indicated by its question that it may have believed one defendant to be less culpable, the trial court responded inadequately by simply referring the jury back to the instructions. (*Id.* at p. 352.)

*Loza* is distinguishable. Here, the jury was not given a jury instruction containing potentially misleading language, such as the "equally guilty" language at issue in *Loza*. We fail to see how the jury could read CALCRIM No. 521 and reasonably conclude, as Nguyen contends, that he could be convicted of first-degree murder without having carefully weighed the considerations for and against the killing before deciding to kill. The jury was instructed: "The defendant acted deliberately *if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill.* The defendant acted with premeditation *if he decided to kill before* committing the act that caused death." (Italics added.)

Nguyen insists that, in response to the jury's question, the trial court was bound to inform them: (1) of "the correct definition of premeditation and deliberation and the relationship of those terms"; and (2) "that a first-degree murder verdict requires a finding of *both* deliberation and premeditation." CALCRIM No. 521 does just that. The trial court did not abuse its discretion, or violate Nguyen's due process rights, in responding to the jury question.

B.      *Prosecutorial Misconduct*

Nguyen also contends that the prosecutor committed misconduct by misstating the law of provocation in her closing argument. He also argues that his federal due process rights were violated because the prosecutor's misstatement of the law lowered the prosecution's burden of proof.

10

Specifically, Nguyen objects to the following portion of the prosecutor's argument: "A killing may be reduced from murder to manslaughter, but only if certain conditions are met. [¶] The first is that the defendant was provoked and that has a very specific legal meaning. The Court will read that to you. That the defendant, due to that provocation, acted rashly. And . . . not any provocation will do. The provocation was the type to cause a person of average disposition to act rashly under the influence of intense emotion. [¶] Basically, what this means, and it is a little complicated. If you have to look at those instructions, *but it means that there is something that provoked the defendant to such an extent that he acted without malice.* Or in the difference between first and second, . . . *that he acted without premeditation and deliberation because this provocation so affected his emotional state and his ability*, *that he couldn't have the intent that's necessary*. [¶] . . . [¶] It can reduce a murder to voluntary manslaughter, *but only if you find the provocation caused the defendant to act without malice aforethought.* It means the provocation was such that and so significant that it caused the defendant to act rashly. [¶] *He was in such a state, he couldn't form the intent to kill. He could not act with implied or express malice. Because of the nature of the provocation.*"

The prosecutor continued: "But look at specifically what is [Nguyen] telling you are facts, specific facts that say or show there was any provocation at all? [¶] Meaning what is he telling you Mai did that so provoked [Nguyen] that he . . . *could only act rashly. He couldn't think about what he was doing.* [¶] What did she do? [¶] . . . [¶] Even if there was some [provocation], . . . is it the type of provocation that would cause a person to act rashly without considering their actions? [¶] And that's why this provocation concept comes in to determine between first and second degree murder. Because in that it goes to whether if there is a provocation that so clouds your ability to think rashly, you can't deliberate. [¶] You can't premeditate because something has caused such an emotional stirring in you that you just act. [¶] . . . [¶] [W]e see that kind on TV all the time. [¶] [A]nd that's kind of one of those killings where say someone is charged or you know someone has been a murderer and a child molester and they kidnapped your child, and were getting away with it. [¶] And you see them out on the

street, and you just found out that they are getting away with it, and they are going to go home, and they had raped your little kid and killed her.  And you pull out a gun and you shoot them. [¶] What you do in shooting them is not excusable, but the law recognizes it is also not murder because that is the nature of provocation." (Italics added.)

Nguyen's trial counsel did not request an admonishment or object to any of the above remarks.[6]  " '[A] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety.  [Citation.]'  [Citation.]" (*People v. Stanley* (2006) 39 Cal.4th 913, 952.)  Accordingly, Nguyen has forfeited his prosecutorial misconduct claim.

However, because Nguyen also contends that his trial counsel's failure to object constituted ineffective assistance, we consider Nguyen's misconduct claim under that rubric.  Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the effective assistance of counsel.  (*Strickland v. Washington* (1984) 466 U.S. 668, 684–686; *People v. Ledesma* (1987) 43 Cal.3d 171, 215.)  This right "entitles [the defendant] to 'the reasonably competent assistance of an attorney acting as his diligent conscientious advocate.'  [Citations.]" (*People v. Ledesma,* at p. 215.)  To establish ineffective assistance of counsel, a defendant must show:  (1) that counsel's performance was so

---

[6] In fact, Nguyen contends that his trial counsel compounded the prosecutor's misconduct by endorsing the same formulation of provocation.  In his closing argument, Nguyen's trial counsel said:  "We are asking you to hold [Nguyen] accountable for what he did. [¶] And what he did is commit a violent act, could have even had the intent to do it. [¶] But if he did it . . . as a result of such a rash of feelings that he could not deliberate, that he could not even think, that he probably was not even thinking . . . .  If you find that that's reasonable, then you know what the law requires you to do. [¶] . . . [¶] Now, I wish I could tell you what malice means in the legal sense, but I haven't been able to figure it out.  Because malice aforethought is not premeditation, the intent to kill.  We will leave that for you to decide. [¶] But if we've got that provocation, that heat of passion and when you look at the evidence, if you think, yes, I see how that affected his mind, I see how that affected his specific intent.  There is no specific intent here." (Italics added.)

deficient that it fell below an objective standard of reasonableness, under prevailing professional norms and (2) that the deficient performance was prejudicial, rendering the results of the trial unreliable or fundamentally unfair. (*Strickland v. Washington,* at pp. 688, 692; *People v. Ledesma,* at pp. 216–217.) To satisfy the prejudice requirement, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington,* at p. 694.)

Nguyen contends: "The prosecutor committed misconduct by erroneously and repeatedly telling the jury that to reduce the crime from murder to manslaughter, provocation had to so enrage [Nguyen] that he could not harbor malice or form the intent to kill. This overstated the level of provocation required because to reduce liability to manslaughter, provocation did not have to render [Nguyen] incapable of forming the culpable mental state. Rather, it would have been sufficient so long as it would have caused an average person of ordinary disposition, with knowledge of the same facts as [Nguyen], to act rashly and without judgment [¶] . . . [¶] Thus, contrary to what the prosecutor repeatedly told the jury, the only task before it on the issue of provocation was to determine whether it was sufficient . . . to cause an average person to act from passion, not judgment. If the jury made such a finding, malice would be negated by operation of law. [¶] . . . [¶] . . . In other words, if the jury determined that provocation was sufficient to cause a person of average disposition to act rashly, [Nguyen's] liability would be reduced from murder to manslaughter because that is what section 192(a) requires, not because of the impact of provocation on the ability to form intent or harbor malice."

It is misconduct for a prosecutor to misstate the law during argument. (*People v. Marshall* (1996) 13 Cal.4th 799, 831; *People v. Otero* (2012) 210 Cal.App.4th 865, 870.) And, the People, in their appellate brief, apparently concede that the prosecutor's comments constituted a misstatement of the law. But, even if we were to find that the prosecutor misstated the law and that Nguyen's counsel had no valid tactical reason for failing to object, Nguyen's ineffective assistance of counsel claim must be rejected

because he has failed to demonstrate a reasonable probability the outcome of his trial would have been different absent that error. "The standard for prejudice is a reasonable probability that, but for counsel's error, the verdict would have been different. [Citations.]" (*People v. Neely* (2009) 176 Cal.App.4th 787, 796; *Strickland v. Washington, supra*, 466 U.S. at pp. 691–694.)

Nguyen suggests that his federal due process rights were violated and that we should apply the *Chapman* standard for prejudice. To support his contention, he relies on *People v. Thomas* (2013) 218 Cal.App.4th 630 (*Thomas*). In that case, Division Three of this court concluded that the *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*) standard was applicable when the trial court refused the defendant's request for CALCRIM No. 570 and thus "the jury was not instructed that it could consider provocation to reduce a murder to manslaughter." (*Thomas*, at pp. 633, 644.) The court held: "[T]he failure to instruct on provocation where warranted is an error of federal constitutional dimension that denies the defendant due process because it relieves the prosecution of the burden to prove malice beyond a reasonable doubt." (*Id.* at p. 642.)

*Thomas* is distinguishable because, here, the trial court instructed the jury, pursuant to CALCRIM No. 570: "A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed someone because of a sudden quarrel or in the heat of passion. [¶] The defendant killed someone because of a sudden quarrel or in the heat of passion if: [¶] 1. The defendant was provoked; [¶] 2. As a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured his reasoning or judgment; [¶] AND [¶] 3. *The provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment.* [¶] Heat of passion does not require anger, rage, or any specific emotion. It can be any violent or intense emotion that causes a person to act without due deliberation and reflection. [¶] In order for heat of passion to reduce a murder to voluntary manslaughter, the defendant must have acted under the direct and immediate influence of provocation as I have defined it. While no specific type of provocation is required, slight or remote provocation is not sufficient. Sufficient

14

provocation may occur over a short or long period of time. [¶] It is not enough that the defendant simply was provoked. The defendant is not allowed to set up his own standard of conduct. You must decide whether the defendant was provoked and whether the provocation was sufficient. *In deciding whether the provocation was sufficient, consider whether a person of average disposition, in the same situation and knowing the same facts, would have reacted from passion rather than from judgment.* [¶] If enough time passed between the provocation and the killing for a person of average disposition to 'cool off' and regain his or her clear reasoning and judgment, then the killing is not reduced to voluntary manslaughter on this basis. [¶] *The People have the burden of proving beyond a reasonable doubt that the defendant did not kill as the result of a sudden quarrel or in the heat of passion. If the People have not met this burden, you must find the defendant not guilty of murder*." (Italics added.) The jury was also instructed: "A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated."

It is conceded that the court's instructions to the jury were correct. And, the trial court instructed the jury: "If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." We must presume that the jury followed this instruction. (*People v. Boyette* (2002) 29 Cal.4th 381, 436; *People v. Mendoza* (2000) 24 Cal.4th 130, 173 ["the 'court's instructions, not the prosecution's argument, are determinative, for "[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade" ' "]; *People v. Najera* (2006) 138 Cal.App.4th 212, 224.)

Nguyen's reliance on *People v. Anzalone* (2006) 141 Cal.App.4th 380, is also misplaced. In that case, the Fourth District Court of Appeal concluded that defense counsel was prejudicially ineffective in failing to object to the prosecutor's misstatement of the law of concurrent intent, when the trial court had not instructed on concurrent intent. (*Id.* at pp. 392–393, 395–396.) The court explained: "The danger in the trial court not instructing on a legal concept relied on by the prosecution is that it totally

15

leaves to the prosecutor the defining of that legal concept. In this case the prosecutor got it wrong." (*Id.* at p. 392.) Thus, "[t]aking the court's proper instructions [on attempted murder] and the prosecutor's erroneous argument [on concurrent intent] together, the jury would have reasonably understood that to find attempted murder it was required to find appellant intended to kill at least one of the men standing by the car; but once it did so, it could find appellant guilty of three additional counts of attempted murder simply because the other victims were in the 'zone of danger.' " (*Id.* at p. 396.)

Here, unlike in *People v. Anzalone,* the jury was fully and correctly instructed on the relevant legal concept. It was also instructed to follow the court's instructions on the law, even if they conflict with statements made by counsel (CALCRIM No. 200). As Nguyen acknowledges in his briefing, there was never a dispute at trial that this was an intentional killing. The only issue was whether the killing was in the heat of passion in response to adequate provocation. Given the strength of the evidence against Nguyen and the trial court's proper instructions, there is no reasonable probability the outcome of Nguyen's trial would have been different absent any error by his counsel.

### III. DISPOSITION

The judgment is affirmed.

_____
Bruiniers, J.

We concur:

_____
Jones, P. J.

_____
Simons, J.