Filed 2/21/14  P. v. Alem CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DANIEL ALEM,<br><br>        Defendant and Appellant. | A136447<br><br>(Alameda County<br>Super. Ct. No. 166881) |

**INTRODUCTION**

In this appeal, defendant Daniel Alem challenges his conviction for attempted robbery and attempted murder.  The central issue in the appeal focuses on the trial court's instruction concerning when a robbery is completed.  The jury was advised:  "The application of force or fear may be used either when taking the property or when carrying the property away. [¶] And the crime of robbery remains in progress . . . until the perpetrator has reached a place of temporary safety."  Defendant challenges this notion on the scope of the robbery.  We conclude the instruction is a correct statement of the law and applies to the facts of this case.

**STATEMENT OF THE CASE**

The district attorney filed an information charging defendant in count one with attempted second degree robbery (Pen. Code,[1] § 211), in count two with attempted murder (§§ 187, subd. (a), 664), and in count three with assault with a semiautomatic firearm (§ 245, subd. (b)).

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

The information further alleged that in the commission of counts one and two, defendant personally and intentionally discharged the firearm and caused great bodily injury (§§ 12022.7, subd. (a), 12022.53, subd. (d)), that defendant personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), and that defendant personally used a firearm (§§ 12022.5, subd. (a), 12022.53, subds. (b) & (g)). The information also alleged regarding count three that defendant personally used a firearm. (§§ 1203.06, subd. (a)(1), 12022.5, subd. (a).) The information alleged as to all three counts that defendant personally inflicted great bodily injury upon the victim. (§ 12022.7, subd. (a).)

The jury found defendant guilty on June 26, 2012 on all counts and found the allegations enumerated above true. The court sentenced defendant on August 24, 2012 to 32 years to life. He filed a notice of appeal on August 28, 2012.

STATEMENT OF FACTS

## A. *Prosecution Case*

Natsagdorj Gantumur, a native of Mongolia who came to the United States in 2001, was walking at 11:00 p.m. on December 1, 2010. He was on Madison Street in Oakland, going to visit a friend. At the time, he was texting on his cell phone. Defendant approached Gantumur and grabbed the cell phone from him, running away. Gantumur had not dropped his phone before the snatch by defendant.

Gantumur chased after defendant, yelling, "Give me back my phone." He caught up with defendant at the intersection of 15th and Madison Streets. As Gantumur confronted defendant, defendant turned, facing Gantumur and pulled gun from his jacket. He pointed the weapon at Gantumur.

Thinking defendant was going to shoot him, Gantumur grabbed the hand holding the weapon, pushing it away from his torso. Once Gantumur physically moved the hand down to defendant's side, defendant began firing the weapon. With this, Gantumur pushed defendant to the ground and Gantumur fell on top of him.

Defendant kept firing the gun. Gantumur began hitting him in the face with his fist while using his other hand to restrain the hand holding the weapon. Eventually, defendant stopped firing because the weapon was empty. Gantumur knew this when he

2

heard the clicking sound of the weapon. When this happened, Gantumur grabbed the gun from defendant and punched him in the face. The two men both stood up and defendant asked for his gun back. Gantumur noticed he had been wounded on his left side from the gun fire. He saw his cell phone on the ground in pieces and picked them up. In fact, Gantumur returned the weapon to defendant, who took it and then ran north on Madison Street.

When Gantumur was interviewed by the police at the hospital, he provided an account of the incident. In his statement he indicated he chased defendant after the phone was taken. According to the police statement, when Gantumur caught up with defendant, he took his phone back. Defendant started to fight him so Gantumur punched defendant. Only then did defendant pull out his gun. Gantumur did acknowledge being handed a copy of his statement at the hospital for review but he was suffering from the injury at the time; he was not concerned about the order of the narrative in the police report. Gantumur, when he testified, disagreed with the chronology contained in the police statement.

Oakland Police Officer Richardson San Andres arrived around 11:11 p.m. at 1529 Madison Street. San Andres learned from spectators someone had been shot at 15th and Madison. The officer noticed Gantumur leaning against a car bleeding from a wound. When Gantumur lifted his shirt, San Andres saw a gunshot wound to his stomach. Gantumur described the assailant to the officer who put out a broadcast of the suspect.

Officer Ercivan Martin found defendant at 17th and Madison. Martin noticed that defendant had a laceration over his eye consistent with a recent punch to the face. Martin cuffed defendant and asked if he had any weapons on his person. Defendant replied, "I don't have a gun on me." During the pat down, Martin found defendant had a holster at his waistband. Defendant indicated he had just found the holster on the street. Martin also noticed defendant had a cut on his left thumb consistent with the injury one gets from firing a semi-automatic firearm.

An ambulance took Gantumur to Highland Hospital. Dr. Melissa Clark treated the shooting victim at the hospital. He had two gunshot wounds. One was in the left upper part of his abdomen and the other was on the back of his left upper thigh. It appeared that one bullet went through the abdomen and out through the left thigh. Gantumur also had a fractured rib. Dr. Clark opined Gantumur was fortunate the bullet did not penetrate any important organs in its path through his torso. Gantumur remained in Highland Hospital overnight and his rib injuries affected his breathing for over one month.

On December 2, 2010, Angel Mowbray was employed as a valet at Lake Chalet, a restaurant near 15th and Madison. About 11:05 p.m., two people came to him and stated they had found a gun in the street. Mowbray called the police with this information and the weapon was found. Katharine Potter, an Oakland police technician, retrieved the gun. The weapon was empty. A magazine was found alongside the gun. Officer Patrick Mahanay processed the crime scene where Gantumur was shot. Eight spent shell casings were found. A member of the Oakland crime lab found the casings matched a casing fired from the weapon retrieved by Potter.

**B.** *Defense Case*

Defendant testified he was going to a friend's house when Gantumur came up to him. Gantumur dropped his cell phone near defendant. Defendant picked it up and handed it to Gantumur. As he picked it up, Gantumur began yelling, "Give me my phone, give me my phone." Defendant asked Gantumur, "Dude, why are you tripping?" With this remark, Gantumur punched defendant in the eye. Gantumur charged at defendant and the two men fell to the ground, with Gantumur hitting defendant in the face. To protect himself, defendant pulled out his gun and fired warning shots. He only intended to scare Gantumur.

As he got up, Gantumur grabbed the weapon from defendant. Defendant asked for the gun back as he picked Gantumur's phone up off the ground. Accepting his phone from defendant, Gantumur returned the gun to him. Defendant then walked away from the scene. As he left, defendant tossed the gun in the bushes. Defendant was concerned the police might find the gun on his person.

4

When he was arrested by Officer Martin, defendant did not advise him he had been assaulted by another person. At the police station, defendant spoke with Officer Phong Tran. Tran asked defendant how he injured his eye, to which defendant replied that someone tried to rob him.

Defendant acknowledged he purchased the gun approximately one year before the incident with Gantumur. He carried two magazines because he might find it necessary to reload the weapon quickly.

The defense maintained there was no trespassory taking here. Rather, defendant simply picked up Gantumur's cell phone from the ground. Gantumur then became suddenly hostile and started hitting defendant. This triggered the need for defendant to pull out his gun in self-protection. His counsel requested and received defense instructions on the scope of self defense.

## DISCUSSION

The issue raised by defendant here is the instruction the trial court gave the jury on attempted robbery.

When the lawyers were settling jury instructions with the trial court, the judge indicated she was going to give CALCRIM No. 1600. The district attorney requested the court advise the jury "the application of force or fear may be used when taking the property or when carrying it away." The court agreed to add this to the instruction.

The prosecutor also suggested the jury be advised "that a theft or robbery remains in progress until the perpetrator has reached a place of temporary safety. . . . [I]t is essential to this case that the jury understand for the use clause that the robbery is still ongoing while the defendant remains on the scene before he has reached a place of safety."

The trial court at first was not inclined to add additional language to CALCRIM No. 1600. She believed the incident at trial was all part of the continuous act of taking Gantumur's phone. The force was ongoing. There was no need for the clarification sought by the prosecutor. The defense agreed with the court's observation, stating, "I object to it [the modification of CALCRIM No. 1600] for the reasons you stated"; i.e., it

5

was unnecessary and repetitive. However, the court decided to take the matter under submission.

After review, and before instructing the jury, the judge indicated the cases do include the transportation of the property to a place of safety within the scope of robbery. She noted, " 'The crime of robbery remains in progress until the perpetrator has reached a place of temporary safety.' " When the court announced the reasons for giving the modification based on her review of the case law, defense counsel expressed no objection.

The court therefore advised the jury pursuant to CALCRIM No. 1600:

"To prove the crime of robbery, the People must prove, one, that the defendant took property that was not his own;

"Two, the property was taken from another person's possession and immediate presence;

"Three, the property was taken against that person's will;

"Four, the defendant used force or fear to take the property or prevent the person from resisting;

"And [five], when the defendant used force or fear to take the property, he intended to deprive the owner of it permanently;

"The defendant's intent to take the property must have been formed before or during the time he used force or fear. If the defendant did not form this required intent until after using the force or fear, then he did not commit robbery."

The court also instructed: "The application of force or fear may be used either when taking the property or when carrying the property away. [¶] And the crime of robbery remains in progress, ladies and gentlemen, until the perpetrator has reached a place of temporary safety."

The standard of review for instructional error obligates the appellate court to determine whether there is a reasonable likelihood the jury misunderstood the instructions after reviewing them in their entirety. (*People v. Cain* (1995) 10 Cal.4th 1, 36; *People v. Kelly* (1992) 1 Cal.4th 495, 526.) We evaluate the entire record, including

6

all the instructions and the argument of counsel interpreting the instructions to the jury. (*Estelle v. McGuire* (1991) 502 U.S. 62, 72 & fn. 4.)

While challenged in this appeal, the instruction given by the trial court in this case was a correct statement of the pertinent law needed to decide this case. We begin our assessment of the court's instruction with the understanding the crime of robbery is a continuing offense. (*People v. Gomez* (2008) 43 Cal.4th 249, 254 (*Gomez*).) As such the crime *continues* until all the elements are satisfied. (*Ibid.*) Asportation or carrying the property of the victim away is an element of the crime. It continues until the suspect reaches a place of temporary safety with the property. (*Id.* at p. 255; *People v. Flynn* (2000) 77 Cal.App.4th 766, 772.)

Additionally, the element of "force or fear" need not arise only in the act of taking the property of another. Carrying away another's property in itself may satisfy the evidence of "force or fear" if that is when this particular element takes place during the robbery act. "A robbery is not completed at the moment the robber obtains possession of the stolen property. The crime of robbery includes the element of asportation, the robber's escape with the loot being considered as important in the commission of the crime as gaining possession of the property. . . . [A] robbery occurs when defendant uses force or fear in resisting attempts to regain the property . . . regardless of the means by which defendant originally acquired the property." (*People v. Estes* (1983) 147 Cal.App.3d 23, 27–28 (*Estes*); *People v. Anderson* (1966) 64 Cal.2d 633, 638.)

In our case, the evidence is uncontradicted defendant obtained possession of Gantumur's cell phone without permission; he snatched it from his hand. As the defendant ran away with the stolen property, Gantumur chased him. When Gantumur caught up with him, defendant turned around and pointed the handgun at his torso. The struggle then followed. In other words, in his escape to a place of safety, when confronted by the victim of the theft, defendant evidenced "force or fear" by brandishing the firearm at Gantumur. Under *Gomez* and *Estes*, the element of "force or fear" was satisfied during the asportation of the stolen property. (See also *People v. Villa* (2007) 157 Cal.App.4th 1429, 1433.) Once the two men struggled after Gantumur was

7

confronted by defendant with the weapon, the victim sustained serious wounds from the discharge of the weapon, such evidence only magnifying the "force or fear" element for robbery.

In his briefing, defendant relies on the recent case *People v. Hodges* (2013) 213 Cal.App.4th 531 (*Hodges*). We find *Hodges* inapposite to the issues in this case. Simply stated, *Hodges* involved a grocery store shoplifting scenario where the guard approached the suspect who was entering his car. The guard advised the suspect he had not paid for the items and needed to return to the store. Hodges claimed he lost the receipt but told the guard he did not want the items and tossed the goods at the guard's partner who had now approached. (*Id.* at pp. 535–536.) Hodges also pushed the partner back, causing the security officer to land against another car. Again, the pushing and relinquishment of the groceries took place after Hodges announced he did not want the goods from the store. (*Id.* at p. 536.)

During argument, counsel for Hodges contended evidence of "force or fear" was absent in the case because his client had relinquished the property before any pushing or tossing of groceries had taken place. The court refused to advise the jury regarding the impact of abandonment of the property before the evidence of "force or fear" is present. (*Hodges, supra*, 213 Cal.App.4th at p. 537.) During deliberations, the jury sent out a specific question on the effect of abandoning the stolen property before the first instance of force or fear occurred. The court, over objection by defense counsel, advised the jury the incident in the parking lot, even with the abandonment of the stolen property by Hodges, could be viewed as a continuation of the robbery because the accused had not reached a place of temporary safety. (*Id.* at p. 538.) This was erroneous. (*Id.* at pp. 542–543.)

Under our facts, the prosecution's theory was the taking here escalated into a robbery because defendant never offered to return the victim's cell phone. Instead, he threatened to keep it at gunpoint. The defense focused on defendant's courteous efforts to hand over Gantumur's dropped phone and the aggressive reaction of the owner. The defense did not develop a theory of abandonment of a trespassory taking as was presented

8

in *Hodges*. Instead, defendant's focus was on misunderstanding and then self-defense. The jury's verdict, after proper instructions, was based on their assessment of the evidence. Also, they had the benefit of the testimony of both Gantumur and defendant in reaching the verdict.

## CONCLUSION

In summary, we find the trial court's instruction on the elements of robbery, especially the application of the element of "force or fear" during the asportation of the stolen property, to be legally correct. We affirm the judgment in this case.

_____
Dondero, J.

We concur:

_____
Margulies, Acting P.J.

_____
Becton, J.[*]

---

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9