Filed 6/23/21  P. v. Alvarado CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D077755 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD282881) |
| ISRAEL ALVARADO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Paula S. Rosenstein, Judge.  Affirmed as modified.

Aurora E. Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

Defendant Israel Alvarado appeals from a judgment entered after a jury found him guilty of burglary, in violation of Penal Code sections 459, 460, subdivision (a), and 667.5, subdivision (c)(21).[1] The trial court sentenced Alvarado to a two-year prison term and imposed various fines and fees.

On appeal, Alvarado raises three claims. First, Alvarado contends that his due process rights were violated because the jury was not instructed fully, clearly, and accurately on the element of intent that is required for a burglary conviction. In the alternative, Alvarado claims that his trial counsel was ineffective for "acts and omissions" that he claims contributed to this instructional error. Second, Alvarado claims that the trial court erred by failing to instruct on the lesser offense of unlawful entry. Finally, Alvarado argues that the trial court's imposition of fines and fees was improper, that their imposition violated his due process rights, and that the abstract of judgment must be amended to reflect that collection of the fines and fees has been stayed.

We conclude that there was no reversible error, and that Alvarado has not shown ineffective assistance of counsel. However, we agree that the trial court improperly imposed a drug program fee and that the abstract of judgment includes a clerical error. We therefore affirm the judgment as modified.

---

[1]   All further unspecified statutory references are to the Penal Code.

2

## II.

## FACTUAL BACKGROUND

A. *Prosecution's Case-in-Chief*

On the morning of August 15, 2019, A.C., a nonparty, banged on and kicked the back door and windows of a duplex, angrily demanding "the keys of the car." A.C. was noticeably intoxicated. Alvarado and another man accompanied her.

A.C.'s mother occupied the duplex. A.C. did not live with her mother and did not have permission to be near her mother because her mother had a restraining order against her. A.C. also did not have permission to use the car keys that she was demanding, which were the keys to her brother's car.

A.C. could not get the back door open because it was locked and barricaded, and her mother was pushing on the door from inside to keep it closed. A.C. directed one of the men to break a window and "go in."

Frightened, A.C.'s mother called out to A.C. and the two men, telling them to go away, that there were children in the home, and that she was going to call the police. When A.C.'s mother called the police, A.C. and one of the men ran away. Alvarado remained and attempted to pry open the door with a metal hot plate.

When the police arrived, an officer entered the mother's kitchen and saw Alvarado's arm reaching into the house through the back door. The officer called out, "Hey!" Alvarado immediately pulled his arm out and ran away.

Outside, other police officers set up a perimeter around Alvarado, who was still in the backyard. They called out several times, telling Alvarado to surrender, but he was uncooperative. Instead, Alvarado used various objects in the backyard to attempt to construct a makeshift barricade, leading the

3

officers to think that he was either mentally ill or intoxicated. Officers finally detained Alvarado after using pepper spray.

B.   *Charged Offense*

Alvarado was charged with burglary in the first degree, in violation of Penal Code section 459. It was alleged that Alvarado "unlawfully enter[ed] a building occupied by [A.C.'s mother] with the intent to commit theft . . . ." The charge included special allegations that the burglary was of an inhabited dwelling, within the meaning of section 460, subdivision (a); and that someone was in the residence during the burglary, within the meaning of section 667.5, subdivision (c)(21). The theft element was premised on an intent to take the car keys.

C.   *Alvarado's Defense*

Alvarado's defense focused on negating the specific intent requirement for a burglary conviction.

Relying first on a voluntary intoxication defense, Alvarado argued that he had so much methamphetamine in his system that he was unable to form the requisite intent. In support, Alvarado presented testimony from a forensic toxicologist who testified that the "erratic" behaviors that Alvarado exhibited before and after his arrest were consistent with someone under the influence of the drug. The forensic toxicologist testified that someone with the level of methamphetamine in his system that Alvarado had was likely hallucinating if he was talking to himself, was likely in the "crash phase" if he was hyperactive and then lethargic, and was exhibiting physical symptoms consistent with use of the drug, such as lack of coordination and profuse sweating.

4

Alvarado also relied on a mistake of fact defense premised on his purported belief that he was accompanying A.C. to her own home to retrieve her own car keys.

## III.

## DISCUSSION

A. *There Was No Reversible Error as to the Specific Intent Requirement for a Burglary Conviction*

Alvarado argues that reversible error occurred through a series of errors relating to the specific intent required for burglary. His primary contention is that the mistake of fact instruction that the trial court used to instruct the jury was "misleading and incomplete" because it did not refer to his purported belief that A.C. had a possessory interest in the car keys. Alvarado claims that this omission, together with a series of related errors that he claims the trial court, the prosecutor, and defense counsel made, prejudiced him. Alvarado also contends that the jury was confused by "incomplete" pattern instructions and by statements made by the prosecutor during closing arguments. Alternatively, Alvarado argues that his trial counsel was ineffective for "acts and omissions" that undermined his defense. We conclude that there was no reversible error, and that Alvarado has not shown that his counsel provided constitutionally ineffective assistance.

1. *No Reversible Error as to Mistake of Fact Instruction*

We turn first to Alvarado's primary contention relating to his mistake of fact defense. Alvarado argues that the mistake of fact instruction (CALCRIM No. 3406) provided to the jury erroneously limited his defense to a belief about A.C.'s possessory interest in the house. Alvarado contends that, at a minimum, the instruction should have also referred to his purported belief that A.C, had a possessory interest in the car keys, and that a "better" instruction would have included language similar to CALCRIM

5

No. 1863, the claim of right instruction, referencing his belief that A.C. had a claim of right to the car keys. Alvarado argues that these omissions, as well the related errors that he identifies on appeal, prejudiced him by depriving him of his right to present a complete defense. We conclude that there was not substantial evidence to support either the mistake of fact instruction or a claim of right instruction in the first instance. Alvarado has thus not shown any error.

### a. *Background*

Following the close of evidence, defense counsel requested that the trial court instruct the jury regarding mistake of fact, in support of Alvarado's defense that he did not have the specific intent to commit burglary because he believed that A.C. had a right to enter the home and take the car keys. Defense counsel claimed to have elicited testimony from A.C.'s mother that A.C. was asking for the keys and that, on the day in question, A.C. claimed to live at the mother's home. The prosecutor objected, arguing that there was not substantial evidence to support giving this instruction.

Finding that there was "some disagreement about the witnesses' testimony" and that "the jury may hear and interpret that in a way that's consistent" with either party's theory, the trial court overruled the prosecutor's objection and agreed to give the requested mistake of fact instruction.

The modified instruction that defense counsel proposed based on CALCRIM No. 3406, the pattern mistake of fact instruction, provided, "If you find that the defendant mistakenly believed the apartment was [A.C.]'s residence, he did not have the specific intent or mental state required for the crime of burglary or attempted burglary as a lesser included offense." Counsel's proposed language did not refer to the car keys.

6

b. *No Evidence to Support Mistake of Fact Instruction or Claim of Right Instruction*

The mistake of fact instruction did not refer to Alvarado's purported belief that A.C. had a possessory interest in the car keys, and the jury was not instructed on a claim of right defense. We conclude that there was no error stemming from these omissions because there was no evidence to support Alvarado's belief that A.C. had a possessory interest in, or a claim of right to, the car keys.

We begin with the two instructions at issue. As modified by defense counsel, the trial court instructed the jury with the following mistake of fact instruction, CALCRIM No. 3406:

> "The defendant is not guilty of burglary or attempted burglary as a lesser included offense if he did not have the intent or mental state required to commit the crime because he mistakenly believed a fact.
>
> "If the defendant's conduct would have been lawful under the facts as he believed them to be, he did not commit burglary or attempted burglary as a lesser included offense.
>
> "If you find that the defendant mistakenly believed the apartment was [A.C.]'s residence, he did not have the specific intent or mental state required for the crime of burglary or attempted burglary as a lesser included offense.
>
> "If you have a reasonable doubt about whether the defendant had the specific intent or mental state required for burglary or attempted burglary as a lesser included offense, you must find him not guilty of those crimes."

While defense counsel did not request that the trial court instruct the jury with CALCRIM No. 1863, the claim of right instruction, Alvarado argues on appeal that the language of this instruction would have "better" explained to the jury how Alvarado's mistaken belief in A.C.'s claim of right to the car

7

keys negated any specific intent on his part to commit a theft.[2] We reproduce the pattern claim of right instruction here, in relevant part:

> "If the defendant obtained property under a claim of right, [he] did not have the intent required for the crime of [theft].
>
> "The defendant obtained property under a claim of right if [he] believed in good faith that [he] had a right to the specific property or a specific amount of money, and [he] openly took it.
>
> "In deciding whether the defendant believed that [he] had a right to the property and whether [he] held that belief in good faith, consider all the facts known to [him] at the time [he] obtained the property, along with all the other evidence in the case. The defendant may hold a belief in good faith even if the belief is mistaken or unreasonable. But if the defendant was aware of facts that made that belief completely unreasonable, you may conclude that the belief was not held in good faith." (CALCRIM No. 1863.)

There was no evidence presented that would support either of these instructions. That is, there was no evidence to support Alvarado's claim that he believed either that he was accompanying A.C. to her own home or that A.C. had a claim of right to the car keys. Alvarado did not testify, so there was no evidence as to what he believed or thought at the time of the relevant events, and he presented no other evidence that would support a mistake of fact defense. When defense counsel first requested a mistake of fact instruction, she claimed to have elicited testimony from A.C.'s mother that A.C. identified the home as hers on the day of the burglary, but the record

---

[2]     The claim of right defense may be extended to a defendant's recovery of a third party's property. (*People v. Williams* (2009) 176 Cal.App.4th 1521, 1527-1529 [defendant entitled to claim of right defense when tried as an accomplice for aiding and abetting his brother in stealing a car and computer that purportedly belonged to the brother]; *People v. Covarrubias* (2016) 1 Cal.5th 838, 874-875 [defendant not entitled to claim of right defense when substantial evidence did not support his claim that he was retrieving property for a friend since defendant was "looting" instead of grabbing a specific item].)

does not support this assertion. Rather, the record reveals only that A.C.'s mother affirmed that A.C. had demanded to enter "the house." There was thus no evidence to support Alvarado's contention that at the time he attempted to gain entry into A.C.'s mother's home, he believed that the home was A.C.'s. Additionally, Alvarado makes much of the fact that A.C. pounded on the door to the duplex and openly demanded the car keys, suggesting that such a demand demonstrates a possessory right to the keys. However, there was no evidence that A.C. ever claimed that the car keys were hers or that she had a right to them, or that appellant believed that A.C. had a right to possess the car keys. In sum, the jury heard only that Alvarado accompanied A.C. to *a* home and that she demanded *the* car keys.

Moreover, the jury was presented with other substantial evidence that was inconsistent with any belief on Alvarado's part that A.C. had a possessory interest in either the home or the car keys. For instance, the jury heard testimony that A.C. violently kicked at a locked and barricaded back door. She did not attempt to gain entry to the home with a key or even by knocking on the front door. The jury also heard that a woman inside the home was pushing against the door to keep it closed while pleading with A.C. and the two men to go away or she would call the police. Finally, the jury heard testimony that A.C. ran away when the police were called, and that Alvarado barricaded himself outside when police arrived. Neither attempted to meet with the police to explain that they were merely seeking property to which A.C. had a right.

In sum, the record was devoid of any evidence that would support Alvarado's contention that he believed that A.C. had a possessory interest in, or claim of right to, the car keys. We conclude that the trial court did not err by omitting a reference to the car keys in the mistake of fact instruction because the court was under no obligation to give this instruction in the first place, given the lack of evidence to support it. We similarly conclude that the court did not err by failing to instruct on a claim of right because there was no evidence to support that instruction, either.

c. *The Trial Court Did Not Err When Responding to a Question from the Jury*

In a related argument, Alvarado claims that the trial court's response to one of the jury's questions was incomplete and misleading because it failed to properly convey that a claim of right defense existed. We disagree.

During deliberations, the jury submitted a note to the trial court with two questions. One of the questions was, "Is theft still theft if [] one is attempting to gain property back for a friend[?]" While conferring with counsel, the court expressed its intention to simply refer the jury to the mistake of fact instruction (CALCRIM No. 3406). Defense counsel agreed to the court's proposal and did not request a modification that would include a reference to the car keys. The prosecutor objected, arguing that the evidence did not support citation to the mistake of fact instruction. Instead, the prosecutor asked that the court refer the jury only to the theft instruction (CALCRIM No. 1800).[3] Finding both instructions relevant, the court

---

3    CALCRIM No. 1800 sets forth the elements for theft and provides, in relevant part:

> This jury instruction provides the definition of "theft" as required for Burglary. [¶] Theft require[s] that: [¶] 1. The defendant took

10

responded to the jury's note as follows: "As to part 2 regarding theft, the Court refers you to Instructions 1800 and 3406."

Section 1138 provides, in relevant part, "After the jury have retired for deliberation, . . . if they desire to be informed on any point of law arising in the case, . . . the information required must be given . . . ." "The court has a primary duty to help the jury understand the legal principles it is asked to apply. [Citation.] This does not mean the court must always elaborate on the standard instructions. Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information." (*People v. Beardslee* (1991) 53 Cal.3d 68, 97.) The court "must at least consider how it can best aid the jury. It should decide as to each jury question whether further explanation is desirable, or whether it should merely reiterate the instructions already given." (*Ibid.*; *People v. Brooks* (2017) 3 Cal.5th 1, 97 (*Brooks*).) We review a trial court's alleged failure to properly answer a jury question for abuse of discretion. (*Brooks*, at p. 97; *People v. Hodges* (2013) 213 Cal.App.4th 531, 539.)

---

possession of property owned by someone else; [¶] 2. The defendant took the property without the owner's or owner's agent's consent; [¶] 3. When the defendant took the property he intended to deprive the owner of it permanently or to remove it from the owner's or owner's agent's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property; [¶] AND [¶] 4. The defendant moved the property, even a small distance, and kept it for any period of time, however brief.

11

We conclude that the trial court did not abuse its discretion in responding to the jury's question. As discussed in Section A.1.b, *ante*, there was no evidence to support either the mistake of fact instruction or a claim of right instruction. Further, the court's reference to the theft instruction was appropriate and complete on its own. Any jury confusion as to whether a theft occurs if a defendant "is attempting to gain property back for a friend" would have been clarified by this instruction, which states that a theft does not occur if a defendant takes property with the permission of the owner *or* his agent. Thus, if the jury believed that A.C. had "complete or partial authority and control over" the car keys, then they could not find that a theft—and by extension, a burglary—occurred.

### d. *The Prosecutor Correctly Argued That Mistake of Fact Was Inapplicable*

In a final point of contention related to his asserted mistake of fact defense, Alvarado claims that the prosecutor improperly argued that mistake of fact did not apply in this case. We again conclude that there was no error.

During closing arguments, the prosecutor noted that there were certain jury instructions that were plainly applicable to the case, such as the requirement that the prosecution prove its case beyond a reasonable doubt and that all of the elements of a crime be proven. The prosecutor then argued that "certain instructions, like mistake of fact, may not apply to this case." Walking the jury through Alvarado's claimed defense of mistake of fact in light of the evidence in the record, the prosecutor highlighted the unreasonableness of Alvarado's claim. The prosecutor then said, "[B]ased on the facts of this case, based on the elements of this case, mistake of fact does not apply."

12

"Advocates are given significant leeway in discussing the legal and factual merits of a case during argument. [Citation.] However, 'it is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its . . . obligation to overcome reasonable doubt on all elements [citation].' [Citations.] To establish such error, bad faith on the prosecutor's part is not required." (*People v. Centeno* (2014) 60 Cal.4th 659, 666 (*Centeno*).)

To determine whether the prosecutor committed error, we must view the challenged statements in the context of the entire argument and the jury instructions to determine whether there was a reasonable likelihood that the jury understood or applied the comments in an improper manner. (*People v. Cortez* (2016) 63 Cal.4th 101, 130-131 (*Cortez*); *Centeno, supra*, 60 Cal.4th at p. 667.) " 'In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*Centeno*, at p. 667.)

Context is critical. "If the challenged comments, viewed in context, 'would have been taken by a juror to state or imply nothing harmful, [then] they obviously cannot be deemed objectionable.' " (*Cortez, supra*, 63 Cal.4th at p. 130.)

A prosecutor's conduct violates the United States Constitution when the conduct " 'infects the trial with such unfairness as to make the conviction a denial of due process' "; that is, when the conduct is " 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' " (*People v. Harrison* (2005) 35 Cal.4th 208, 242.) A prosecutorial error that does not render a trial fundamentally unfair violates California law only if

13

the conduct involved the use of deceptive or reprehensible methods to persuade a judge or jury. (*Ibid.*)

Alvarado did not object to the prosecutor's statements during closing arguments. This claim is therefore forfeited. (See *Pearl v. City of Los Angeles* (2019) 36 Cal.App.5th 475, 488 [failure to timely object to improper statements in closing argument forfeits any appellate challenge based on such misconduct]; *Regalado v. Callaghan* (2016) 3 Cal.App.5th 582, 598 ["To preserve a claim of attorney misconduct for appeal, a timely and proper objection must have been made at trial; otherwise, the claim is forfeited."].)

The claim also fails on the merits. A "prosecutor is entitled to argue his or her case vigorously and may properly assert that defense counsel's argument reflected a misunderstanding of the relevant law." (*People v. Young* (2005) 34 Cal.4th 1149, 1192.) Moreover, as discussed in Section A.1.b, *ante*, there was, in fact, no evidence presented at trial to support Alvarado's claim that he believed that either the home or the car keys belonged to A.C., or that she had a claim of right to them. The prosecutor was, therefore, correct in arguing that mistake of fact did not apply to this case.

e.     *No Showing of Ineffectiveness of Counsel*

In the alternative, Alvarado argues that his trial counsel was ineffective for (1) failing to request a claim of right instruction; (2) failing to request that language regarding the car keys be added to the mistake of fact instruction; (3) failing to clarify during closing arguments the relevance of a mistake of fact as to the car keys; (4) failing to object to the prosecutor's closing arguments; and (5) failing to request the inclusion of language in the trial court's response to the jury note referring to Alvarado's belief that A.C.

had a claim of right to the car keys. Alvarado has not demonstrated that his attorney provided ineffective assistance.

"To prevail on a claim of ineffective assistance of counsel, the defendant must show counsel's performance fell below a standard of reasonable competence, and that prejudice resulted." (*People v. Anderson* (2001) 25 Cal.4th 543, 569 (*Anderson*).) A defendant is prejudiced by counsel's representation if there is a reasonable probability that the outcome would have been more favorable to the defendant but for counsel's failings. (*Strickland v. Washington* (1984) 466 U.S. 668, 694.)

As discussed in Section A.1.b, *ante*, there was no evidence to support either a mistake of fact instruction or a claim of right instruction as to the car keys. Alvarado is thus unable to demonstrate prejudice from trial counsel's alleged failure to ensure that the mistake of fact instruction included a reference to the car keys, to request an instruction on a claim of right, to object to the prosecutor's statements on mistake of fact during closing arguments, or to clarify in her own closing arguments the import of Alvarado's belief that A.C. had a claim of right to the car keys. Because Alvarado cannot demonstrate prejudice, his claim of ineffective assistance of counsel necessarily fails. (See *Anderson, supra*, 25 Cal.4th at p. 569.)

2. *Alvarado Has Not Shown Jury Confusion*

Alvarado next contends that the jury was confused by the pattern instructions, by the prosecutor's conflation of "motive" and "intent," and by the prosecutor's misstatement of the law on voluntary intoxication. We disagree.

15

a.      *The Jury Instructions Were Neither Confusing Nor Incomplete*

Alvarado argues that the pattern instructions—CALCRIM Nos. 252[4] (specific intent), 1700[5] (burglary), and 1800[6] (theft)—were confusing and incomplete because there was a "double cross-reference" for the intent requirement "from the specific intent instruction to the burglary instruction to the completed theft instruction."  He argues that the specific intent

_____

[4]      CALCRIM No. 252 addresses specific intent and provides, in relevant part:

> "The crime and allegations charged in this case require proof of the union, or joint operation, of act and wrongful intent.  [¶] . . . [¶]

> "For you to find a person guilty of this crime, that person must not only intentionally commit the prohibited act, but must do so with a specific intent.  The act and the specific intent required are explained in the instruction for that crime.  [¶] . . . [¶]

> "For you to find the allegation true, that person must not only commit the prohibited act, but must do so with wrongful intent. A person acts with wrongful intent when he or she intentionally does a prohibited act; however, it is not required that he or she intend to break the law.  The act required is explained in the instruction for that crime or allegation."

[5]      CALCRIM No. 1700 sets forth the elements for burglary and provides, in relevant part:

> "To decide whether the defendant intended to commit theft, please refer to the separate instructions that I will give you on that crime.

> "A burglary was committed if the defendant entered with the intent to commit theft. The defendant does not need to have actually committed theft as long as he entered with the intent to do so. The People do not have to prove that the defendant actually committed theft."

[6]      See footnote 3, *ante*.

16

required for burglary should have been set forth in a single, separate instruction. He also argues that the trial court's instruction on "motive" added to the confusion because motive was not addressed by the prosecutor, separate from intent. We conclude that the instructions pertaining to the intent required for burglary were proper and sufficient.

In a criminal case, the trial court has a sua sponte duty to instruct the jury on all general principles of law relevant to the issues raised by the evidence. (*Brooks*, *supra*, 3 Cal.5th at p. 73.) "A claim of instructional error is reviewed de novo. [Citation.] An appellate court reviews the wording of a jury instruction de novo and assesses whether the instruction accurately states the law. [Citation.] In reviewing a claim of instructional error, the court must consider whether there is a reasonable likelihood that the trial court's instructions caused the jury to misapply the law in violation of the Constitution. [Citations.] The challenged instruction is viewed 'in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.' " (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) Instructional error requires reversal of the judgment only if it resulted in a miscarriage of justice, meaning that it is reasonably probable that the defendant would have fared better in the absence of the error. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *People v. Watson* (1956) 46 Cal.2d 818, 836; see *People v. Cavitt* (2004) 33 Cal.4th 187, 209 [erroneous limiting instruction subject to *Watson* harmless error analysis].)

To evaluate Alvarado's claim of instructional error, we first consider the instructions given to the jury. Alvarado was charged with a single count of burglary. The trial court instructed the jury that burglary is a specific intent crime, that a defendant commits a burglary if he entered a building

with the intent to commit a theft, and that theft involves taking possession of property owned by someone else without the owner's or owner's agent's consent, with the intent to deprive the owner of it permanently. An agent, in turn, was defined as someone to whom the owner has given complete or partial authority and control over the owner's property. The jury was also instructed that the prosecution is not required to prove that Alvarado had a motive to commit burglary, though the presence or absence of a motive could be a factor tending to show that a defendant is guilty or not guilty, respectively (CALCRIM No. 370).[7]

We are satisfied that the jury was correctly instructed with straightforward references to related clarifying instructions. Read together, the instructions on burglary, specific intent, theft, and motive accurately conveyed the elements of the crime of burglary, including the requisite specific intent, and clarified that the presence or absence of motive, while not an element of the crime, may be considered when determining a defendant's guilt. We presume that the jury understood and followed the jury instructions. (*People v. Gonzales* (2011) 51 Cal.4th 894, 940 (*Gonzales*).)

Even if a separate instruction concerning the specific intent required for a burglary conviction might have offered further clarity, Alvarado has not shown that the instructions, as provided, were incorrect, inadequate or

---

[7]     CALCRIM No. 370, the instruction pertaining to motive, provides:

> "The People are not required to prove that the defendant had a motive to commit any of the crimes or allegations. In reaching your verdict you may, however, consider whether the defendant had a motive. [¶]

> "Having a motive may be a factor tending to show that the defendant is guilty or that an allegation is true. Not having a motive may be a factor tending to show the defendant is not guilty or that an allegation is not true."

18

confusing.  "A trial court is not obliged to condense the required explanation of a legal rule or concept in a single instruction; a charge is not erroneous or prejudicial simply because a required explanation is given in two instructions rather than one."  (*People v. Lewis* (2001) 25 Cal.4th 610, 649.)  If Alvarado wanted the court to give an additional, separate instruction on specific intent, it was incumbent on him to propose a pinpoint instruction on the specific intent required for burglary.  His failure to do so forfeited this claim.  (*People v. Richardson* (2008) 43 Cal.4th 959, 1022-1023 [failure to request modification of otherwise correct instruction forfeits claim on appeal]; *People v. Gutierrez* (2009) 45 Cal.4th 789, 872 [defendant bears burden of requesting pinpoint instruction].)

> b. *The Prosecutor's References to Motive in Closing Argument*

Alvarado next argues that the prosecutor improperly conflated "motive" and "intent" in her closing argument, and that this purportedly confused the jury.

During closing arguments, the prosecutor made comments to the effect that, while Alvarado was motivated to burglarize A.C.'s mother's home, his plan was poorly thought out.  The prosecutor returned to these comments a couple of times.  First, while discussing the specific intent required for burglary, the prosecutor stated, "[T]he second element I must prove . . . is that when he entered, he had the intent to commit theft.  As I said before, he was motivated, but it was poorly thought out."  Then, during her final remarks, the prosecutor said, "[Alvarado] had motivation to do what he was doing.  He just didn't think it out that smartly."

To the extent that Alvarado claims error based on these comments by the prosecutor, he forfeited this claim on appeal by not objecting during closing arguments.  Even if we were to reach the merits, we would conclude

19

that the prosecutor's references to motive while discussing the intent required for burglary was not error, and even assuming error, was harmless. The prosecutor made only one such reference while discussing intent, and that reference was made during a lengthy soliloquy on the intent required for burglary. Alvarado's suggestion that these references confused the jury is speculative. The jury was properly instructed on both intent and motive, and they did not indicate to the court that they were confused. Further, Alvarado has not shown that it is reasonably likely that the jury applied the comments in an improper or erroneous manner.

Alvarado has also not shown that trial counsel was ineffective for failing to object to the prosecutor's statements. (See *Anderson, supra*, 25 Cal.4th at p. 569.) We disagree, initially, that the prosecutor erred by referencing motive while discussing intent. But even assuming error, Alvarado has not shown that he was prejudiced by it. As we noted, the comments were brief and made in passing, the prosecutor spent a considerable portion of her closing arguments discussing the specific intent required for burglary, and the jury was properly instructed on both intent and motive. There is thus no showing that it was reasonably likely that the jury mistook motive for intent. In the absence of prejudice, counsel cannot be deemed to have been ineffective.

      c.    *The Prosecutor Did Not Misstate the Law with Respect to Voluntary Intoxication*

Alvarado argues that the jury was further confused by "the prosecutor's insistence that voluntary intoxication [is] not a defense to burglary because all that the law required was that Mr. Alvarado's actions be knowing." In support of this argument, Alvarado cites to the prosecutor's statements that "the law doesn't require that you have to be smart or not smart to commit a

20

crime. It's just showing a level of acknowledgement in terms of what he knew and what he was doing" and that "[h]e knew what he was doing."

Notwithstanding Alvarado's forfeiture of this claim for failure to object, we conclude that there was no error. First, the prosecutor's comments are not reasonably understood as Alvarado proposes. Rather, the comments appear to be responsive to Alvarado's own arguments about his state of mind. Defense counsel had argued that voluntary intoxication is a complete defense to the charged offense. She claimed that Alvarado was so intoxicated that he could not have formed the specific intent necessary for burglary because he was "not quite there," he was potentially "hav[ing] a hard time separating reality from hallucination," and the range of drugs in Alvarado's system was so high that Alvarado may have been unable to "tell the difference . . . between the truth and reality."

In response to this argument, the prosecutor noted that, while some intoxicated individuals can be "so high out of [their] mind that [they] didn't know what was going on," Alvarado's behavior did not rise to that level. Addressing the reference to hallucinations, the prosecutor argued that this argument by defense counsel was intended to "distract" the jury by suggesting that Alvarado "must not know what he's doing." But if Alvarado was indeed so unaware of his circumstances, then why, asked the prosecutor, did he remove his hand when the officer said, "Hey!" or build a barricade to attempt to thwart his arrest, or knowingly waive his *Miranda* rights? The prosecutor argued that Alvarado's intoxication did not render him unable to distinguish between truth and reality, let alone unable to form the requisite intent for burglary.

More fundamentally, the jury was instructed that it was required to follow the law as explained in the instructions, and that if an attorney's

21

comments on the law conflicted with the court's instructions, the jury was to follow the instructions.[8]  The jury instruction on voluntary intoxication, CALCRIM No. 3426, informed the jury that it could consider "defendant's voluntary intoxication only in a limited way.  You may consider that evidence only in deciding whether the defendant acted with specific intent to commit a crime."  That same instruction provided that "the People have the burden of proving beyond a reasonable doubt that the defendant acted with specific intent to permanently deprive the owner of her property."  This instruction, coupled with the instructions for burglary (CALCRIM No. 1700) and theft (CALCRIM No. 1800), properly set forth the specific intent requirement for a burglary conviction.  We again presume that the jury understood and followed the jury instructions, and Alvarado has provided no basis to conclude that the jurors were unable or unwilling to do so.  (*Gonzales*, *supra*, 51 Cal.4th at p. 940.)  In the absence of error, we also conclude that trial counsel was not ineffective for failing to object to the prosecutor's statements. (See *Anderson*, *supra*, 25 Cal.4th at p. 569.)

3.     *There Was No Cumulative Error*

Alvarado argues that the cumulative effect of the alleged errors relating to the specific intent required for burglary warrants reversal.[9]

---

[8]     The jury was instructed with CALCRIM No. 200, which provides, in relevant part, "You must follow the law as I explain it to you, even if you disagree with it.  If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions.  [¶]  Pay careful attention to all of these instructions and consider them together."

[9]      In a section of his brief relating to juror confusion, Alvarado argues in passing that the prosecutor erred by referencing his post-arrest silence.  This claim was not asserted under a separate heading or subheading.  (Cal. Rules of Court, rule 8.204(a)(1)(B).)  We will therefore not address it as a claim of error.

"Under the 'cumulative error' doctrine, errors that are individually harmless may nevertheless have a cumulative effect that is prejudicial." (*In re Avena* (1996) 12 Cal.4th 694, 772, fn. 32.) "A claim of cumulative error is in essence a due process claim and is often presented as such [citation]. 'The "litmus test" for cumulative error "is whether defendant received due process and a fair trial." ' " (*People v. Rivas* (2013) 214 Cal.App.4th 1410, 1436.)

We have concluded that none of Alvarado's claims of error as to the specific intent required for burglary has merit. There is thus no series of prejudicial errors to cumulate. Accordingly, Alvarado cannot demonstrate that the cumulative effect of the alleged errors resulted in prejudice. (See *In re Reno* (2012) 55 Cal.4th 428, 483 ["As noted, claims previously rejected on their substantive merits—i.e., this court found no legal error—cannot logically be used to support a cumulative error claim because we have already found there was no error to cumulate."].)

B.    *Unlawful Entry Instruction Was Not Required*

Alvarado contends that the trial court's failure to instruct the jury on unlawful entry, Penal Code section 602.5, as a lesser included offense of burglary under the accusatory pleading test was reversible error. We disagree.

" ' "[I]t is the 'court's duty to instruct the jury not only on the crime with which the defendant is charged, but also on any lesser offense that is both included in the offense charged *and shown by the evidence to have been committed.*' [Citation.]" [Citations.]' (*[People v.] Castaneda* [(2011)] 51 Cal.4th [1292,] 1327, italics added)." (*People v. Westerfield* (2019) 6 Cal.5th 632, 718.) " ' "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense . . . ." [Citation.] Rather, substantial evidence must exist to allow a reasonable jury to find that the

23

defendant is guilty of a lesser but not the greater offense.  [Citation.]
" ' "Substantial evidence is evidence sufficient to 'deserve consideration by the
jury,' that is, evidence that a reasonable jury could find persuasive." ' "
[Citation.]'  (*People v. Valdez* [(2004)] 32 Cal.4th [73,]116, fn. omitted.)"
(*Westerfield*, at p. 718.)  Instructions regarding lesser *related* offenses are not
to be given absent the mutual assent of the parties.  (*People v. Birks* (1998) 19
Cal.4th 108, 112-113 (*Birks*).)

 " 'On appeal, we review independently the question whether the trial
court failed to instruct on a lesser included offense.' [Citation.]"  (*People v.
Avila* (2009) 46 Cal.4th 680, 705.)  In noncapital cases such as this one, the
failure to instruct on a lesser included offense is reviewed for harmless error
under the standard set forth in *People v. Watson, supra*, 46 Cal.2d 818, which
asks whether it is reasonably probable that the defendant would have
obtained a more favorable result if the instructional error had not occurred.
(*Id.* at p. 836; see *People v. Breverman* (1998) 19 Cal.4th 142, 148-149
(*Breverman*).)

 " 'Under California law, a lesser offense is necessarily included in a
greater offense if either the statutory elements of the greater offense, or the
facts actually alleged in the accusatory pleading, include all the elements of
the lesser offense, such that the greater cannot be committed without also
committing the lesser.' "  (*Breverman, supra*, 19 Cal.4th at p. 154, fn. 5.)

 "The elements test is satisfied if the statutory elements of the greater
offense include all of the statutory elements of the lesser offense, such that all
legal elements of the lesser offense are also elements of the greater.
[Citation.]  In other words, ' "[I]f a crime cannot be committed without also
necessarily committing a lesser offense, the latter is a lesser included offense
within the former." '  [Citations.]  Under the accusatory pleading test, a lesser

24

offense is included within the greater charged offense if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense." (*People v. Bailey* (2012) 54 Cal.4th 740, 748.)

Foregoing a claim of error under the statutory elements test, Alvarado argues only that the trial court erred when it failed to instruct on unlawful entry, or trespass,[10] under the accusatory pleading test.[11] We conclude that the trial court did not err. Residential burglary is the entry of a dwelling with the intent to commit a theft. (§§ 459 & 460, subd. (a).) Criminal trespass is the entry of a residence without the owner's consent. (See § 602.5, subds. (a) & (b).) In the crime of burglary, it is the defendant's felonious intent, not the absence of consent or permission, that renders an entry unlawful. (See *People v. Salemme* (1992) 2 Cal.App.4th 775, 780 [noting the " 'law . . . is that one [who enters a structure with the intent to commit petty theft or a felony] may be convicted of burglary even if he [or she] enters with consent,' " as long as he or she does not have a possessory right to enter].) By contrast, the unlawful act that underlies criminal trespass is entry without the owner's consent. (See § 602.5, subds. (a) & (b) [Under section 602.5, subdivision (a), "Every person other than a public officer . . . who enters or remains in any noncommercial dwelling house, apartment, or other

_____

10    Unlawful entry is sometimes referred to as trespass. (See *People v. Yoder* (1979) 100 Cal.App.3d 333, 339-340 [equating unlawful entry with trespass].)

11    As the California Supreme Court has held, criminal trespass is not a lesser included offense of burglary under the elements test. (*Birks, supra,* 19 Cal.4th at p. 118, fn. 8 ["trespass is not a lesser necessarily included offense of burglary"].) This is "because burglary, the entry of specified places with intent to steal or commit a felony (§ 459), can be perpetrated without committing any form of criminal trespass (see § 602)." (*Birks,* at p. 118, fn. 8.) That is, "[a] burglary may be committed by one who has permission to enter a dwelling." (*People v. Lohbauer* (1981) 29 Cal.3d 364, 369.)

25

residential place *without consent of the owner* . . . is guilty of a misdemeanor." (Italics added.)]; see also CALCRIM No. 2932 [to be guilty of trespass, the People must prove the defendant (1) willfully entered or remained in a noncommercial building belonging to someone else and that he or she (2) entered or remained without the consent of the person in lawful possession of the property].)

The information did not allege that Alvarado "unlawfully" entered a building occupied by another "without the owner's consent." Rather, it alleged that Alvarado "did unlawfully enter a building occupied by [A.C.'s mother] with the intent to commit theft . . . ." Under the allegations in the information, it was Alvarado's intent to steal that made his entry unlawful, not A.C.'s mother's lack of consent. To "unlawfully enter" is not synonymous with to "enter without consent," as Alvarado contends. Because the information did not allege unlawful entry under the accusatory pleading test, the trial court was not required to instruct on unlawful entry as a lesser included offense of burglary.

While trespass is not a lesser included offense of burglary, it is a lesser *related* offense. (See *People v. Taylor* (2010) 48 Cal.4th 574, 622 ["Trespass is a lesser related crime of burglary"].) Nonetheless, the trial court still had no duty to instruct on unlawful entry where, as here, there is no indication that the parties mutually assented to giving the instruction. (*Birks*, *supra*, 19 Cal.4th at pp. 136-137; *People v. Foster* (2010) 50 Cal.4th 1301, 1343-1344 [finding that because "trespass is a lesser related offense, not a lesser included offense, of burglary[,]" the court had no sua sponte duty to deliver the instruction].)

Therefore, the trial court did not err in failing to instruct the jury on the offense of unlawful entry.

C.	*Fines and Fees*

Finally, Alvarado raises three issues concerning the fines and fees that the trial court imposed. Alvarado first asks us to strike the drug program fee as unauthorized. He also seeks correction of the abstract of judgment to reflect that the fines and fees that the court imposed have been stayed pending an ability to pay hearing. Third, he contends that the trial court's imposition of the fines and fees before an ability to pay hearing was held violated his due process rights. We agree that the drug program fee should be stricken and that the abstract of judgment should be corrected.

1.	*Background*

At the sentencing hearing, the trial court imposed several fines and fees, including an $1,800 restitution fine pursuant to Penal Code section 1202.4, subd. (b), a $40 court operations assessment pursuant to Penal Code section 1465.8, a $30 criminal conviction assessment fee pursuant to Government Code section 70373, and a $615 drug program fee pursuant to Health and Safety Code section 11372.7.

Following the imposition of these fines and fees, defense counsel requested an ability to pay hearing. The trial court granted this request, stating, "The court will stay collection of the fees that I've just imposed pending showing that Mr. Alvarado has the ability to pay."

2.	*Drug Program Fee Shall Be Stricken*

Alvarado first asks us to strike the drug program fee that was imposed pursuant to Health and Safety Code section 11372.7. He contends that the fee is unauthorized because he was not convicted of violating any provision of the Health and Safety Code related to controlled substances. Respondent does not oppose this request. We therefore modify the judgment by striking the $615 drug program fee.

27

3. *The Trial Court Stayed the Fines and Fees*

Alvarado next seeks to have all of the imposed fines and fees stricken, urging us to read the trial court's statement that it will "stay collection of the fees that I've just imposed" as a ruling to delay their *imposition* until an ability to pay hearing has been held. We decline to do so. It is clear that the trial court imposed, and stayed, the fines and fees; the court did not delay their imposition.

4. *The Imposition of the Fines and Fees Does Not Warrant Reversal*

Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), Alvarado seeks a conditional reversal of the fines and fees on the ground that his due process rights were violated when the trial court imposed them before holding a hearing on Alvarado's ability to pay. We conclude that, to the extent the trial court may have erred by imposing the fines and fees before holding a hearing, reversal is not warranted because the trial court granted Alvarado all of the relief to which he would be entitled under *Dueñas* pending an ability to pay hearing.

The *Dueñas* court held that due process precludes a trial court from "impos[ing]" certain assessments and fines when sentencing a criminal defendant in the absence of determination that the defendant has a "present ability to pay" those assessments and fines. Specifically, *Dueñas* held that "due process of law requires [a] trial court to . . . ascertain a defendant's present ability to pay before it imposes" (1) "court facilities and court operations assessments" (under Pen. Code, § 1465.8 and Gov. Code, § 70373, respectively), or (2) a restitution fine (under Pen. Code, § 1202.4). (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1164, 1167, 1172.)

We conclude that it is unnecessary under the circumstances of this case to traverse the rocky post-*Dueñas* terrain. While the *Dueñas* court

28

announced its holding in due process terms, its ultimate disposition was to stay execution of the restitution fine pending an ability to pay hearing, and to reverse the order imposing the assessments because the trial court had found the defendant to be indigent. (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1162-1164, 1168-1169, 1172-1173; *People v. Castellano* (2019) 33 Cal.App.5th 485, 490 (*Castellano*) ["Our holding in *Dueñas* that the fees and assessments could not constitutionally be assessed and that execution of the restitution fine had to be stayed was based on the trial court's uncontested finding that Dueñas was unable to pay the amounts imposed"].)[12]

Assuming, solely for the purpose of addressing Alvarado's argument,[13] that we agree with the decision in *Dueñas*, and further assuming that the trial court committed error under *Dueñas* when it imposed the fines and fees before holding an ability to pay hearing, reversal is not warranted because the trial court stayed execution of the restitution fine pending an ability to pay hearing and also stayed execution of the assessments.

In *Dueñas*, the assessments were reversed based on ample evidence in the record and the trial court's own determination that the defendant was indigent, having suffered through "a series of criminal proceedings driven by, and contributing to, [her] poverty." (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1163-1164; *Castellano*, *supra*, 33 Cal.App.5th at p. 490.) In contrast,

---

[12]    Less than three months after *Dueñas* was decided, a different panel of the same court decided *Castellano*.

[13]    Our court has declined to adopt the *Dueñas* court's due process analysis. Instead, we have concluded that due process does not " 'bar[] the imposition of . . . assessments and [a] . . . restitution fine' even as to a defendant who is unable to pay." (*People v. Cota* (2020) 45 Cal.App.5th 786, 795; see *People v. Allen* (2019) 41 Cal.App.5th 312, 326 ["[W]e would adopt the reasoning of the numerous courts that have rejected *Dueñas*'s due process analysis."].)

there is nothing in the record to suggest that Alvarado is unable to pay the assessments. To the contrary, Alvarado was only 26 years old when he committed the charged offense. According to the Probation Report, he is able-bodied, "enjoys working," worked part-time in the concrete industry earning $50 per hour, and has future plans to "find[] a good job and work[]." And unlike the defendant in *Dueñas*, Alvarado's incarceration is not a consequence of prior criminal assessments and fines that have " 'snowball[ed].' " (*Dueñas*, at p. 1164.)

Having been granted an ability to pay hearing, Alvarado will have the opportunity to demonstrate that he is unable to pay the assessments and the restitution fine. *Dueñas* requires no more than this.

5.    *The Abstract of Judgment Shall be Modified*

On a final note, there is a discrepancy between the oral pronouncement of judgment, on the one hand, and the abstract of judgment and the minute order, on the other hand. At the sentencing hearing, the trial court imposed an $1,800 restitution fine and an additional $1,800 probation revocation fine that was stayed unless Alvarado's probation was revoked. However, the minutes of the pronouncement of judgment and the abstract of judgment indicate that each of these fines was only $300. Where there is a discrepancy between the oral pronouncement of judgment and the abstract of judgment or minute order, the oral pronouncement controls. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186; *People v. Mesa* (1975) 14 Cal.3d 466, 471.) We will therefore exercise our inherent authority to order that clerical errors in the existing abstract of judgment be corrected. (*People v. Rowland* (1988) 206 Cal.App.3d 119, 123.)

Alvarado also contends that the abstract of judgment needs to be corrected to reflect that the trial court stayed the execution of the fines and

fees.  In fact, the abstract of judgment includes precisely this information in line item number eight ("fines & fees stayed pending defendant's ability to pay").  There is, therefore, no need for a correction in that regard.

IV.

DISPOSITION

On remand, the trial court shall strike the drug program fee from the judgment and the abstract of judgment.  In addition, the clerk of the superior court shall amend the abstract of judgment and the minute order of July 22, 2020, to reflect the imposition of a restitution fine in the amount of $1,800 pursuant to section 1202.4, subdivision (b), and a probation revocation fine in the amount of $1,800 pursuant to section 1202.45.  The clerk of the superior court shall forward a copy of the amended abstract of judgment to the California Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


AARON, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DO, J.


31