[No. A131542. First Dist., Div. Three. Jan. 31, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM DREW HODGES, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts B., C. and D.

## COUNSEL

Thea Greenhalgh, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Rene A. Chacon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JENKINS, J.**—Defendant and appellant William Drew Hodges appeals from the judgment entered after a jury found him guilty of robbery (Pen. Code,[1] § 211), assault with a deadly weapon (§ 245, subd. (a)(1)) and felony petty theft with a prior (§ 666). As explained below, because the trial court's response to a jury question was misleading and it failed to provide a pinpoint instruction requested by defendant, we shall reverse the judgment and remand for further proceedings.

### PROCEDURAL BACKGROUND

The Sonoma County District Attorney filed a felony complaint against defendant in March 2009. In June 2009, defendant, assisted by counsel and pursuant to a plea agreement, entered guilty pleas to assault by means of force likely to result in grievous bodily injury and petty theft with a prior.

---

[1] Further statutory references are to the Penal Code unless otherwise specified.

Before imposition of sentence, however, the trial court granted the prosecution leave to amend the complaint to allege several newly discovered priors from out of state and permitted defendant to withdraw his plea.

A second amended complaint was filed in September 2009. Subsequently, the public defender's office determined defendant was not eligible for legal services. Defendant appeared with retained counsel at setting hearings held in December 2009 and January through February 2010. On March 9, 2010, the date set for the preliminary hearing, defendant appeared with retained counsel and pleaded no contest to charges of robbery, assault with a deadly weapon and petty theft with a prior, pursuant to a negotiated disposition. In August 2010, the trial court again permitted defendant to withdraw his guilty plea, this time because his retained counsel misinformed him about the maximum term he would receive under the negotiated disposition. Thereafter, retained counsel indicated he intended to withdraw from the case due to defendant's inability to pay and the trial court appointed the public defender and set trial for October 7, 2010.

On September 2, the public defender informed the court defendant was ineligible for legal services. On September 8, defendant signed a *Faretta*[2] waiver form stating he wanted to represent himself and give up his right to be represented by a lawyer. The *Faretta* waiver signed by defendant was also signed by the court just below a section of the form stating that based on the court's observation of and discussion with defendant, the court found defendant voluntarily, and with full understanding of the disadvantages of self-representation, chose to represent himself. Defendant represented himself at the preliminary hearing held on October 19 and was held to answer on all charges.

On November 2, 2010, the Sonoma County District Attorney filed an information charging defendant with robbery (§ 211) (count 1), assault with a deadly weapon, to wit, a car (§245, subd. (a)(1)) (count 2) and petty theft with a prior (§ 666) (count 3). The information also alleged defendant suffered three prior strike convictions for robberies committed during an incident in New Mexico in February 1997. On Friday December 17, the date set for trial, defendant appeared with Attorney Erick Guzman. Guzman informed the court he wished to represent defendant pro bono, stated he had

---

[2] (*Faretta v. California* (1975) 422 U.S. 806, 835–836 [45 L.Ed.2d 562, 95 S.Ct. 2525] [holding that a criminal defendant has a right, under the 6th Amend. to the federal Const., to conduct his or her own defense, provided that he or she knowingly and intelligently waives his or her 6th Amend. right to the assistance of counsel].)

just received discovery, and requested a continuance. The trial court denied counsel's request for a continuance and stated the court would address motions in limine the following Monday, December 20.

On December 22, counsel delivered opening statements and presentation of evidence commenced. The jury returned guilty verdicts on all charges on December 27. In a subsequent bifurcated proceeding and bench trial, the court found true the prior felony allegations. At a sentencing hearing held on March 8, 2011, the trial court struck two of the three prior felony convictions for sentencing purposes, and imposed a state prison sentence of 11 years. Defendant filed a timely notice of appeal on March 22, 2011.

## FACTS

At trial, the prosecution presented testimony from two percipient witnesses, loss prevention officer Jason Anderson (named in the information as the victim of the robbery and assault) and his colleague, fellow loss prevention officer Valentin Ramirez. Defendant did not testify at trial.

Valentin Ramirez testified that in March 2009 he was employed as a loss prevention officer by Monument Security, assigned to the Safeway store in Petaluma as a plainclothes security officer. On March 12, Ramirez was on duty with Jason Anderson, who was also assigned by Monument to work at the Petaluma Safeway store. While on duty together, they customarily called each other for assistance by cell phone. At approximately 8:30 p.m. on March 12, Ramirez noticed defendant enter the store without a basket or cart. Ramirez followed defendant on foot through the store. In the soft drinks aisle, Ramirez observed defendant take out a clear plastic Safeway bag and place several items into the bag, including sodas, batteries and some bananas. Ramirez called Anderson for assistance and then stationed himself at the front of the store. Ramirez observed defendant approach the front of the store, look around, and then walk out of the store carrying the items he had previously placed in the bag. Defendant did not stop at any point of sale (register) prior to leaving the store.

Ramirez followed defendant out of the store into the parking lot. Ramirez informed Anderson defendant had left the store with the goods and asked for assistance. When Ramirez caught up to defendant, defendant was sitting behind the wheel of his car, a two-door Ford Thunderbird, with the driver's door open. Ramirez identified himself as store security and asked if defendant had a receipt for the goods. Defendant claimed he lost the receipt, so Ramirez asked defendant to accompany him back into the store in order to verify the purchase. Defendant offered to give the goods back to Ramirez but Ramirez refused; he explained to defendant he could not just take the items back and

defendant would have to return to the store. Defendant then started his car engine. Ramirez, surmising defendant was not going to accompany him back to the store, walked to the rear of defendant's vehicle to phone 911 and report defendant's license plate number. Anderson approached defendant's vehicle; the driver's side door was open. Anderson told defendant he had to return to the store. As defendant got out of the car Ramirez observed "[defendant] looked like he was handing the items back to my partner. . . . And he just pushed the items towards Anderson, like shoved them, and went [back] inside his car and tried to reverse out." Ramirez also testified defendant tossed the items at Anderson, "like it was a distraction," and the items hit Anderson in the chest.

Anderson fell back into a parked van when the items tossed at him by defendant hit him in chest. Anderson recovered and reached inside of defendant's car to turn the engine off, however defendant put the car in reverse causing the car to move backward while Anderson was reaching for the keys. Defendant's car continued to move in reverse, dragging Anderson along. At some point, defendant hit the brakes and Anderson "popped out" of the vehicle. Ramirez yelled at Anderson to let defendant go because the police were on their way. Just then, defendant's car began to move in reverse again and Anderson was struck by the open driver's door. The force of the contact with the door propelled Anderson up and over the driver's door and he landed on the ground. Defendant then backed out of the parking stall and drove away quickly. Ramirez identified defendant from a photo lineup.

Jason Anderson largely corroborated the testimony given by Ramirez. Anderson testified that when he asked defendant to come back to the store, defendant asked Anderson "to cut me some slack, man." When Anderson told defendant company policy required that he return to the store, defendant said, "Okay," and stepped out of the car. After defendant got out of the car, he threw the six-pack of bottles at Anderson's face, striking him in the right eye. After the bottles hit Anderson in the face, defendant pushed Anderson on the right shoulder with both hands causing Anderson to fall against a parked van and onto the ground, where he landed on his shoulder. Anderson further testified that after the incident involving defendant, he experienced pain in both shoulders, his right thumb, his back and his right toe, and subsequently received treatment at the VA hospital, including surgery for a fractured toe.

### DISCUSSION

#### A. The Court's Response to a Jury Question Was Misleading

Defendant contends the trial court's response to a jury question was constitutional error under the federal Constitution because it presented an invalid theory of guilt and relieved the prosecution of its burden of proof. As

explained below, we conclude the trial court's response to the jury question was an abuse of discretion under section 1138.

### 1. *Background*

Before the case was submitted to the jury, defendant asked the trial court to give the following instruction: "If Defendant truly abandoned the victim's property before using force, then, of course, he could be guilty of theft, but not of . . . robbery. *People v. Pham* (1993) 15 Cal.App.4th 61, 68 [18 Cal.Rptr.2d 636]." During the course of settling instructions, the trial court denied defendant's requested instruction, and the following colloquy ensued:

"[Defense counsel]: Your Honor, if I could just make one quick point about the instruction I proposed?

"The Court: Yes.

"[Defense counsel]: I believe . . . Ramirez testified that [defendant] shoved the merchandise back, and that was before everything with the car. So if the jury believed that, then that could be viewed as an abandonment of the stolen property. [¶] . . . [¶]

"The Court: He shoved the items, and he hit Mr. Anderson in the chest. . . . Mr. Anderson indicated the bottles. And I don't believe that constitutes true abandonment. I believe that converts the property to basically a weapon. [¶] . . . [¶] . . . Your objection is noted. . . ."

Subsequently, the trial court gave the CALCRIM No. 1600 robbery instruction, as follows: "The defendant is charged in Count I with robbery.

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant took property that was not his own;

"2. The property was taken from another person's possession and immediate presence;

"3. The property was taken against that person's will;

"4. The defendant used force or fear to take the property or to prevent the person from resisting;

"AND

"5. When the defendant used force or fear to take the property, he intended to deprive the owner of it permanently.

"The defendant's intent to take the property must have been formed before or during the time he used force or fear. If the defendant did not form this required intent until after using the force or fear, then he did not commit robbery.

"If you find the defendant guilty of robbery, it is robbery of the second degree.

"A person *takes* something when he or she gains possession of it and moves it some distance. The distance moved may be short.

"The property taken can be of any value, however slight.

"A person does not have to actually hold or touch something to possess it. It is enough if the person has the right to control it, either personally or through another person.

"A store employee who is on duty has possession of the store owner's property."

After jury deliberations began, the trial court received two handwritten notes from the jury containing questions about the jury instructions. The question from the jury at issue here stated: "Robbery (Penal Code 211) Point 4 states 'The defendant used force or fear <u>to take the property</u> or to prevent the person from resisting.' [¶] As stated, the defendant would be guilty here <u>only</u> if force or fear was used during the commission of the theft. [¶] However, the force/fear was subsequent to the act, in the parking lot, after the defendant had surrendered the goods (throwing them at Mr. Anderson). [¶] Does the timing/sequence of events—theft, <u>then</u> force/fear bear on the applicability of this clause—would point 4 apply here?" The court proposed the following response to the jury question: "With regard to Count 1, Penal Code 211, the theft is deemed to be continuing until the defendant has reached a point in which he is no longer being confronted by the security guards. Thus, item 4 of the instruction 1600 applies to the confrontation in the parking lot." Defense counsel objected to the court's proposed instruction on the grounds that "[t]he theft ceased after he no longer had the intent to maintain, to keep the property." The court overruled counsel's objection and answered the question in the form proposed by the court. Shortly thereafter, the jury returned its verdicts.

### 2. *Applicable Standards of Review*

█ "When a jury asks a question after retiring for deliberation, '[s]ection 1138 imposes upon the court a duty to provide the jury with information the jury desires on points of law.' [Citation.]"[3] (*People v. Eid* (2010) 187 Cal.App.4th 859, 881–882 [114 Cal.Rptr.3d 520] (*Eid*).) "This does not mean the court must always elaborate on the standard instructions. Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. . . . But a court must do more than figuratively throw up its hands and tell the jury it cannot help. . . . It should decide as to each jury question whether further explanation is desirable, or whether it should merely reiterate the instructions already given." (*People v. Beardslee* (1991) 53 Cal.3d 68, 97 [279 Cal.Rptr. 276, 806 P.2d 1311], citation omitted.) "We review for an abuse of discretion any error under section 1138. [Citation.]" (*Eid, supra,* 187 Cal.App.4th at p. 882.)

Section 1138 error due to the trial court's failure to adequately answer the jury's question is subject to the prejudice standard of *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], i.e., "whether the error resulted in a reasonable probability of a less favorable outcome. (*People v. Roberts* (1992) 2 Cal.4th 271, 326 [6 Cal.Rptr.2d 276, 826 P.2d 274].) In this context, 'reasonable probability' means ' "merely a *reasonable chance*, more than an *abstract possibility,*" of an effect of this kind.' (*People v. Blakeley* (2000) 23 Cal.4th 82, 99 [96 Cal.Rptr.2d 451, 999 P.2d 675].)" (*Eid, supra,* 187 Cal.App.4th at p. 882.) Also, a failure to instruct on all elements of an offense is a constitutional error "subject to harmless error analysis under both the California and United States Constitutions." (*People v. Flood* (1998) 18 Cal.4th 470, 475 [76 Cal.Rptr.2d 180, 957 P.2d 869] (*Flood*).) Under the federal Constitution, the standard is whether the instructional error was harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]. (See *Flood, supra,* 18 Cal.4th at p. 504.)

### 3. *The Elements of Robbery*

█ Before we evaluate the propriety of the court's response to the jury question at issue, a brief review of the elements of the crime of robbery is appropriate. Robbery is " ' " 'a species of aggravated larceny.' " ' " (*People v.*

---

[3] Section 1138 provides: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."

*Gomez* (2008) 43 Cal.4th 249, 254 [74 Cal.Rptr.3d 123, 179 P.3d 917] (*Gomez*).) Theft by larceny involves "the taking of another's property, with the intent to steal and carry it away." (*Gomez, supra,* 43 Cal.4th at pp. 254–255.) The "taking" of property has two components, "caption" (achieving possession of the property) and "asportation" (carrying the property away), where "the slightest movement" may constitute asportation and "the theft continues until the perpetrator has reached a place of temporary safety with the property. [Citation.]" (*Id.* at p. 255.) "To elevate larceny to robbery, the taking must be accomplished by force or fear and the property must be taken from the victim or in his presence. [¶] In robbery, the elements of larceny are intertwined with the aggravating elements to make up the more serious offense." (*Gomez, supra,* 43 Cal.4th at p. 254, fn. omitted.) Nevertheless, there is no single "temporal point at which the elements must come together" in order to constitute the offense of robbery; rather, "robbery, like larceny, is a continuing offense," and whereas "[a]ll the elements must be satisfied before the crime is completed[,] . . . no artificial parsing is required as to the precise moment or order in which the elements are satisfied." (*Gomez, supra,* 43 Cal.4th at p. 254.)

■ Courts have considered, under different factual scenarios, the interaction of the taking element of larceny, "caption," with the aggravating factors that constitute robbery—the use of force or fear and the taking from the victim's presence. For example, in *Gomez*, the defendant broke into a restaurant and took cash from an ATM in the lobby. The restaurant manager arrived and saw the defendant slip out a side door and walk away from the restaurant. The manager followed in his truck and the defendant shot at the truck to scare the manager off. (See *Gomez, supra,* 43 Cal.4th at p. 253.) Although the victim was not present at the taking, the Supreme Court upheld the defendant's robbery conviction on the grounds that robbery occurs "whether a perpetrator relies on force or fear to gain possession *or to maintain possession* against a victim who encounters him for the first time as he carries away the loot." (*Gomez, supra,* 43 Cal.4th at p. 265, italics added.)

Likewise, in relation to the element of the use of force or fear, a robbery occurs where a perpetrator achieves possession of the property in the victim's immediate presence *without* the use of force or fear, then uses force or fear during asportation in order to retain possession of the property. (See *People v. Anderson* (1966) 64 Cal.2d. 633, 638 [51 Cal.Rptr. 238, 414 P.2d 366] [defendant guilty of robbery where he "use[d] force or fear in removing . . . the property from the owner's immediate presence"].) Addressing the use of force or fear during asportation, several appellate courts have affirmed robbery convictions on the grounds that what began with larceny ripened into robbery due to the defendant's use of force or fear to maintain possession of the property.

For example, in *People v. Estes* (1983) 147 Cal.App.3d 23 [194 Cal.Rptr. 909] (*Estes*), the defendant entered a Sears store, picked up a coat and vest and walked out without paying for them. A security guard followed the defendant outside the store and attempted to detain him after the defendant refused to return to the store. The defendant pulled out a knife, swung it at the guard and threatened to kill him. The defendant was convicted of robbery and appealed on the grounds "his assaultive behavior was not contemporaneous with the taking of the merchandise from the store." (*Estes, supra,* 147 Cal.App.3d at p. 28.) The appellate court noted that because "[t]he crime of robbery is a continuing offense[,] . . . [i]t is sufficient to support the conviction that appellant used force to prevent the guard from retaking the property and to facilitate his escape. . . . Whether defendant used force to gain original possession of the property or *to resist attempts to retake the stolen property,* force was applied against the guard *in furtherance of the robbery* and can properly be used to sustain the conviction." (*Ibid.,* italics added; see *People v. Pham, supra,* 15 Cal.App.4th at p. 67 [robbery conviction affirmed where defendant "forcibly asported . . . the victims' property when he physically resisted their attempts to regain it"]; *People v Torres* (1996) 43 Cal.App.4th 1073, 1077–1079 [51 Cal.Rptr.2d 77] [robbery conviction affirmed where defendant swung at victim with a screwdriver to keep him at bay, got out of the victim's car holding the victim's stereo, told victim " 'it is over with,' " and put the stereo back on victim's passenger seat and left]; *People v. Flynn* (2000) 77 Cal.App.4th 766, 772 [91 Cal.Rptr.2d 902] [holding that "willful use of fear to *retain property* immediately after it has been taken from the owner constitutes robbery" (italics added)].)

### 4. *The Court's Misleading Response*

Having concluded our review of the elements of robbery, in particular, how the use of force or fear during asportation elevates larceny to robbery, we now address the propriety of the court's response to the jury question at issue. In its question to the court, the jury included prefatory statements that defendant used force or fear after he "surrendered the goods (throwing them at Mr. Anderson)" and that "defendant would be guilty here only if force or fear was used during the commission of the theft." These prefatory statements demonstrate the jury sought legal guidance on whether defendant could be convicted of robbery if they determined he "surrendered" the goods prior to the use of force. Thus the jury's inquiry required guidance on two distinct and different elements of robbery: (1) taking, which not only includes achieving possession but carrying property away, or asportation, and (2) the point at which the defendant must employ force or fear in connection to the taking to complete the crime of robbery. That this is so is reflected in the jury's request for guidance from the court on the "timing/sequence of events—theft, then force/fear" in determining whether defendant committed robbery. In this regard, and as noted in our review of the elements of robbery,

it is well established that a defendant who takes property from the immediate presence of the owner without use of force or fear, but uses force or fear to retain possession of the property when the owner attempts to retrieve it, is guilty of robbery. (See, e.g., *Estes, supra*, 147 Cal.App.3d at p. 28 [any force applied against the victim "*in furtherance of the robbery* . . . can properly be used to sustain the conviction" (italics added)]; *People v. Pham, supra*, 15 Cal.App.4th at p. 67 [robbery conviction affirmed where defendant "forcibly asported . . . the victims' property when he physically resisted their attempts to regain it"]; *People v. Flynn, supra*, 77 Cal.App.4th at p. 772 [holding that "willful use of fear to *retain property* immediately after it has been taken from the owner constitutes robbery" (italics added)].)

However, in framing its response to the jury, the trial court failed to address the jury's inquiry regarding the legal impact of defendant's surrender of the goods and the relationship of that conduct to the required use of force. Rather, the trial court instructed the jury: (1) the "*theft* is deemed to be continuing until the defendant has reached a point in which he is no longer being confronted by the security guards" (italics added) (2) therefore, "item 4 of the instruction . . . applies to the confrontation in the parking lot." The trial court's response was misleading.

The court's instruction that "the *theft* is deemed to be continuing until the defendant has reached a point in which he is no longer being confronted by the security guards" (italics added) is based on the "escape rule," which "defines the *duration* of the underlying felony, *in the context of certain ancillary consequences of the felony* [citation], by deeming the felony to continue until the felon has reached a place of temporary safety. [Citation.]" (*People v. Cavitt* (2004) 33 Cal.4th 187, 208 [14 Cal.Rptr.3d 281, 91 P.3d 222], italics added; see CALCRIM No. 3261 [providing that for purposes proving an allegation, such as defendant personally used a firearm, the crime of robbery "continues until the perpetrator(s) (has/have) actually reached a temporary place of safety"]; *People v. Cooper* (1991) 53 Cal.3d 1158, 1164–1165 [282 Cal.Rptr. 450, 811 P.2d 742] [distinguishing between the initial *commission* of robbery at "a fixed point in time" once all the elements are satisfied and "the *duration* of the commission of a robbery for purposes of assessing aider and abettor liability" (italics added), and stating that "[a]lthough for purposes of establishing guilt, the asportation requirement is initially *satisfied* by evidence of slight movement [citation], asportation is not confined to a fixed point in time [and] continues thereafter as long as the loot is being carried away to a place of temporary safety; [t]herefore . . . a getaway driver must form the intent to facilitate or encourage commission of the robbery prior to or during the carrying away of the loot to a place of

temporary safety" (fn. omitted)].)[4] However, the jury's question did not pertain to the duration of the theft in relation to ancillary consequences. Rather, the jury sought guidance on whether the timing of defendant's surrender of the property was relevant to the element of force or fear in establishing robbery.

■ The court's response, fashioned in part on the above cited "escape rule," not only failed to address the crux of the jury's inquiry but also informed the jury that "item 4 of the instruction [regarding use of force] applies to the confrontation in the parking lot." This court's instruction was misleading because it allowed the jury to conclude defendant was guilty of robbery without regard to whether defendant intended to permanently deprive the owner of the property at the time the force or resistance occurred. Otherwise stated, this aspect of the court's instruction conflated elements 4 and 5 of the robbery instruction and permitted the jury to find defendant guilty of robbery based on defendant's confrontation with security guards, without also finding (under element 5) that defendant used force with the intent to retain the property or prevent its recovery by the lawful owner. Finally, the court's instruction, "[I]tem 4 . . . applies to the confrontation in the parking lot," improperly resolved the factual conflict inherent in the jury's inquiry regarding the impact of defendant's surrender of the goods prior to the use of force.[5] Therefore, we conclude that the court's response to the jury's inquiry amounted to an abuse of discretion under section 1138.

B.–D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[4] Consider the following hypothetical: A person leaves a store without paying for goods, drops the goods when confronted by a security guard, and flees; the guard gives chase and at some point during the pursuit, the person uses force to resist the pursuing guard's attempt to detain him. Under this hypothetical, the escape rule, concerning the *duration* of the offense, is not in play because no robbery was *committed*, there being no evidence that the person intended to deprive the owner of the property at the time force was used.

[5] Under the case law discussed *ante*, because defendant did not use force in taking the property, in order to convict him of robbery the prosecution had to prove, and the jury had to find, defendant used force to maintain possession of the property against the lawful efforts of the owner to regain it. (See, e.g., *Estes, supra*, 147 Cal.App.3d at p. 28 [robbery conviction upheld where defendant "used force to prevent the guard from retaking the property and to facilitate his escape"]; *People v. Pham, supra*, 15 Cal.App.4th at p. 67 [robbery conviction affirmed where defendant "forcibly asported . . . the victims' property when he physically resisted their attempts to regain it"].)

*See footnote, *ante*, page 531.

## DISPOSITION

Defendant's robbery conviction is reversed. The judgment is vacated and the matter is remanded for further proceedings consistent with this opinion.

McGuiness, P. J., and Siggins, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 15, 2013, S209176.