Filed 9/18/24

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LUIS ALFONSO MARTINEZ,<br><br>    Defendant and Appellant. | D083424<br><br><br>(Super. Ct. No. INF2101332) |

APPEAL from a judgment of the Superior Court of Riverside County, Harold W. Hopp, Judge. Affirmed in part; reversed in part; and remanded with instructions.

Christine M. Aros, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General of California, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

We address three issues in this case: (1) What remedy to impose when a jury returns verdicts on all charges against a defendant because a trial

court failed to instruct the jury that the charges before it were in the alternative; (2) Whether sufficient evidence supported Martinez's conviction on count 5 for lewd acts by force, fear, or duress; and (3) Whether the trial court abused its discretion when answering the jury's question regarding the meaning of "sexual penetration" using specific anatomical language not discussed during trial.

On the first issue we asked for supplemental briefing. The parties agree, as do we, that the court's omission of instructions explaining charges in the alternative resulted in prejudicial error requiring remand. Where the sides disagree is what directive to give the trial court when the case is returned to it. Appellant says the court's mistake requires us to order a new trial, or at a minimum, return the matter to the trial court for further hearing to determine on what count(s) to sentence. The respondent (the People) maintains that we should order the trial court to hold a hearing to determine on which count(s) to vacate the jury verdict(s). We find little guidance in this area, but after reviewing the statutory history of Penal Code section 288.5,[1] we agree the proper remedy is to remand the matter for a hearing by the trial court to determine which count(s) to vacate.

On the second question we find the record provides ample evidence on which a jury could base its verdict convicting defendant of committing a lewd act on a child while using force, fear, or duress, in violation of section 288, subdivision (b)(1).

Finally, we find no error in the court's answer to the jury's question. The jurors themselves used specific language to refer to a part of Jane Doe's body and the trial court incorporated that into its answer. The term is widely

---

[1]     All further undesignated statutory references are to the Penal Code.

2

known and requires no specialized training to understand.  In this instance no error occurred.

Therefore, we remand for a hearing and resentencing but otherwise affirm the trial court.

## II. FACTS

### A. *The Abuse*

Jane Doe's mother began dating Martinez in 2011 or 2012, when Doe was six or seven years old.  Martinez taught at Doe's elementary school, where he and her mother met.  Martinez dated Doe's mother for approximately 10 or 11 years; Martinez lived at their house during some of that time.

Martinez began molesting Doe when she was about seven years old. Doe knew what Martinez did to her was wrong, but she was "terrified" and scared that no one would listen to her because she was the victim of prior abuse by someone else that went unreported.  In addition to molesting her, Martinez made Doe feel uncomfortable by making inappropriate comments about her body.  Sometimes Doe's mother heard Martinez make these comments, but the mother never did or said anything in response.

The first time Martinez molested Doe, she was sleeping on the couch in the living room while her grandmother stayed in Doe's bedroom.  Martinez sat down on the couch next to Doe's head, putting his hand under Doe's blanket and underwear.  He began touching her on the outside of her vagina. He then grabbed and held Doe's hand, while moving it up and down on his penis. Doe was "really scared" and unsure what was going to happen next. Out of fear, she did not tell anyone what happened.

3

On some occasions, Martinez would molest Doe while she slept between her mother and Martinez during "family movie night." He would rub his fingers on the "inner-outside" area and the "inside part" of her vagina.

Martinez continued to molest Doe in the same manner for about four more years. The abuse happened "so many times" and when it occurred, Doe "would just sit there and wait for it to be over."

The relationship between Doe and Martinez changed when she was 11 or 12 years old and entering middle school. She became enraged and wanted no relationship with Martinez. About this time, Martinez stopped molesting Doe. He was still in Doe's life after the molestations ended, and Doe remained "too afraid" to tell anyone what he did to her.

In July 2021, while seeing a therapist for anxiety and panic attacks, Doe told the therapist about the sexual abuse by Martinez. Because the therapist was a mandatory reporter, she informed Doe's mother about the abuse and called law enforcement.

Soon after her disclosure to the therapist, a Riverside County Department of Children's Services interviewer spoke with Doe. Doe disclosed that on several occasions Martinez molested her. In August 2021, Riverside County Sheriff's Department investigators assisted Doe in making a recorded, pretext phone call to Martinez to get Martinez to admit to the sexual abuse allegations. Doe made specific statements to Martinez about what he did to Doe. Martinez did not deny the acts, mostly remaining quiet. Law enforcement officers later arrested Martinez at his house.

## B. *Trial and Sentencing*

In December 2022, a jury convicted Martinez of attempted sexual penetration of a child under 10 years of age (§§ 288.7, subd. (b), 664, count 1), sexual penetration of a child under 10 years of age (§ 288.7, subd. (b),

count 2); three or more lewd and lascivious acts committed upon a child under the age of 14 (§ 288.5, count 3); lewd acts committed upon a child under the age of 14 (§ 288, subd. (a), count 4); and lewd acts committed on a child under the age of 14 by use of force, duress, and fear (§ 288, subd. (b)(1), count 5).[2]  The jury also found true the aggravating factors that Doe was particularly vulnerable, and Martinez took advantage of a position of trust or confidence.  (Cal. Rules of Court, rule 4.421(a)(3) & (11).)

In January 2023, the trial court sentenced Martinez to prison for the indeterminate term of 15 years to life, and the determinate term of 21 years and four months.  The sentence was comprised of two years and four months for count 1; 15 years to life for count 2; the middle term of 12 years for count 3; two years for count 4; and five years for count 5.

### III. DISCUSSION

**A. *Martinez's Convictions Violate Section 288.5, Subdivision (c)***

Section 288.5 defines continuous sexual abuse of a child and provides in pertinent part:  "No other act of substantial sexual conduct . . . involving the same victim may be charged in the same proceeding with a charge under this section unless the other charged offense occurred outside the time period charged under this section *or the other offense is charged in the alternative*." (§ 288.5, subd. (c), italics added.)  Under this legislative scheme, charges in the alternative means prosecutors may not obtain convictions for both continuous sexual abuse and specific sexual offenses committed on the same victim during the same date range.  (*People v. Johnson* (2002) 28 Cal.4th

---

[2]    The jury found Martinez not guilty on a sixth count that alleged he knowingly distributed harmful matter to a minor, a violation of section 288.2, subdivision (a)(2).

240, 248 (*Johnson*).)  If multiple convictions are obtained in violation of section 288.5, subdivision (c), "then the multiple convictions predicated thereon cannot stand, and either the continuous abuse conviction or the convictions on the specific offenses must be vacated." (*Johnson,* at p. 245; accord, *People v. Torres* (2002) 102 Cal.App.4th 1053, 1057 (*Torres*).)

Here, the law prohibited the jury from convicting Martinez on counts 1, 2, 4 and 5 (defined sexual assault crimes) while also finding him guilty on count 3 (continuous sexual abuse).  Rather, the jury could return guilty verdicts on counts 1, 2, 4 and 5 while acquitting on count 3 or, convict on count 3 and acquit on counts 1, 2, 4, and 5.

Prior to trial the court asked the prosecutor and defense attorney for suggested jury instructions.  The parties conveyed their requests to the court through a check-the-box type form.  But neither side requested CALCRIM No. 3516 (entitled, "Multiple Counts:  Alternative Charges for One Event—Dual Conviction Prohibited") which instructs on charges in the alternative and a jury's requirement to convict on one of the alternatives, but to acquit on the other.

Later, at sentencing, the probation department representative, also apparently unaware of section 288.5's prohibition against convicting on the individual child molest counts and the continuous child abuse charge from the same time period, recommended imposing the middle term of 12 years for count 3, in addition to prison terms on the other counts.  At that hearing the prosecution and defense remained unaware of section 288.5, subdivision (c)'s requirements.  The defense attorney merely asked the court to stay the prison term for continuous sexual abuse pursuant to section 654.  Opposing defense counsel's section 654 argument, the prosecutor fought for imposition of prison terms on *all* counts because "during the same time period, the

6

defendant perpetrated multiple acts of victimization on the victim, as she testified, that were similar to what's charged in Counts 1, 2, 4, and 5, but not those specific counts." This argument is prohibited under section 288.5, subdivision (c). The court, however, agreed with probation and the prosecution, sentencing Martinez on all counts.

On this topic CALCRIM gives conflicting guidance. CALCRIM No. 1120, defining continuous child abuse, informs us in its Related Issues section, that where defined child molest crimes are charged and there is a continuous sexual abuse count also alleged for the same period, then the trial court has "a **sua sponte** duty to give CALCRIM No. 3516." If one cross-checks CALCRIM No. 1120's directive against CALCRIM No. 3516's Bench Notes section, one finds disagreement with the court having *any* duty, much less a sua sponte duty, to use CALCRIM No. 3516: *"Because the law is unclear in this area, the court must decide whether to give this instruction* if the defendant is charged with specific sexual offenses and, in the alternative, with continuous sexual abuse under Penal Code section 288.5."[3] (Italics added.)

Given the convictions in this matter violate section 288.5, we are left to determine a remedy. We start by examining section 288.5 and its history.

---

[3]     CALCRIM No. 3516's Bench Notes section does not define for the reader what the lack of clarity here is, or what a trial court should do to inform the jury about charges in the alternative if it declines to give the instruction. In any event, the internal conflict within CALCRIM's recommendations about using CALCRIM No. 3516 along with CALCRIM No. 1120 is unhelpful. We would encourage the CALCRIM advisory committee to resolve the apparent contradiction we outlined above.

**B.** *Appropriate Remedy*

1. *Standard of Review*

Martinez's claim here involves statutory interpretation and issues of law.  Therefore, we review the matter de novo.  (See *People v. McCarthy* (2016) 244 Cal.App.4th 1096, 1103–1104.)

2. *Section 288.5*

The parties agree, as do we, that Martinez's convictions violate section 288.5, subdivision (c).  (See *Torres, supra,* 102 Cal.App.4th at pp. 1056–1057; *Johnson, supra,* 28 Cal. 4th at p. 248.)  A closer look at that statute is instructive to understanding why we remand this matter to the trial court for resentencing.

The legislature enacted section 288.5 to address appellate court decisions reversing convictions in a series of "resident child molester" cases. (See e.g., *People v. Van Hoek* (1988) 200 Cal.App.3d 811; *People v. Atkins* (1988) 203 Cal.App.3d 15; *People v. Luna* (1988) 204 Cal.App.3d 726.) "[R]esident child molester[s]" are adults with continuous access to a child (at home, in a friend's or relative's house, or a daycare, for instance); the sexual assaults occur so frequently that children are unable to distinguish one event from another.  (*People v. Jones* (1990) 51 Cal.3d 294, 299.)  In such cases children often give what is called generic testimony, because under the circumstances they have "no practical way of recollecting, reconstructing, distinguishing or identifying by 'specific incidents or dates' all or even any such incidents."  (*Id*. at p. 305.)  However, appellate courts reasoned that generic child abuse testimony violated a defendant's due process rights against both being able to defend adequately against sexual assault charges and "and by precluding a unanimous jury verdict as to each act charged in

8

the information." (*Id.* at p. 300; see also *People v. Vasquez* (1996) 51 Cal.App.4th 1277, 1285.)

In response, lawmakers determined that there was "an immediate need for additional statutory protection for the most vulnerable among our children, those of tender years, some of whom are being subjected to continuing sexual abuse," (Stats. 1989, ch. 1402, § 1, subd. (a)) section 288.5 created "a course-of-conduct crime" not requiring a child relate a specific date, time, or particular "set of circumstances." (*People v.* Vasquez, *supra*, 51 Cal.App.4th at p. 1285.) This made it easier for prosecutors to prove sexual assault against children under 14 where an abuser had recurring access to the victim. The elements of the crime were such that generic testimony could satisfy its requirements. (*People v. Avina* (1993) 14 Cal.App.4th 1303, 1312.) A prosecutor need only show that in addition to recurring access to the child victim, the perpetrator committed three defined sex acts (detailed in the statute), over three months. (§ 288.5, subd. (a).)

But, important here, lawmakers also placed limits on the new code section by excepting it from section 954,[4] which allows filing multiple counts stemming from the same conduct. (*Johnson, supra*, 28 Cal. 4th at pp. 245–246.) Instead, section 288.5, subdivision (c) specifically forbids that practice, stating that continuous sexual abuse and individual child sex assault crimes could only be "charged in the alternative." Consequently, whether by CALCRIM or another means, courts have a duty to inform juries

---

[4] Section 954 states in relevant part, "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense . . . . The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged . . . ."

of their obligation to decide between convicting a defendant on defined sexual acts against a child and *acquitting* on the continuous sexual abuse count, or vice versa. The trial court in this matter failed to give the jury that information. As a result, the jury returned verdicts on all counts. This violated section 288.5, subdivision (c).

## C. *The Remedy Is to Remand to the Trial Court for Resentencing*

The inquiry then turns to determining a remedy where section 288.5, subdivision (c) is violated. The statute itself is silent on what to do. Only the legislature can cure the omission. And we find nothing in the legislative history or cases which would support vacating the verdicts in favor of a retrial.[5]

In so concluding we reject Martinez's argument that he was deprived of due process protections because a jury might have convicted him of only count 3, which carried a lower prison term than count 1. On the other hand, like the People, we recognize that in a case where the trial court exercised sentencing discretion, as here by imposing on Martinez the middle term on

---

[5] At common law, typically where dual convictions were improperly had by convicting of theft and receiving stolen property, the traditional remedy was dismissal of a count (the receiving stolen property allegation). (*People v. Ceja* (2010) 49 Cal.4th 1, 10.) But the reasoning was anchored in the relationship of a thief to the property taken: A thief could not receive from herself or himself the same items she or he stole. A theft conviction, therefore, *barred* a guilty verdict on a receiving stolen property charge. (*People v. Jaramillo* (1976) 16 Cal.3d 752, 759.) The relationship between the legislatively created continuous child sexual abuse charge and defined sexual assault crimes are not analogous to the theft/receiving stolen property dichotomy. Therefore, the common law approach provides us little assistance. And section 288.5's legislative history reveals no information on the subject.

10

count 3, the better approach is to allow the trial court to revisit this case rather than impose our own sentencing decision.

This differs from how *Torres* and other cases approached this error. They assert the most appropriate sentence will always be the one which imposes the longest prison term. (See, e.g., *People v. Patton* (2024) 101 Cal.App.5th 922, 931 ["Generally, this means 'upholding whichever conviction[s] resulted in the greater aggregate penalty and vacating the less serious count[s]' "], *People v. Rojas* (2015) 237 Cal.App.4th 1298, 1309–1310 [Correcting violation of § 288.5, subd. (c), "will ordinarily translate to upholding whichever conviction resulted in the greater aggregate penalty and vacating the less serious count"].) This method resulted in appellate courts dismissing counts and recalculating the defendant's sentence. (See, e.g., *Johnson*, *supra*, 28 Cal.4th at p. 248 ["the Court of Appeal correctly reversed the convictions on counts 2 through 6"], *Torres*, *supra*, 102 Cal.App.4th at p. 1059 [appellate court dismissed § 288.5, subd. (a) conviction which carried a lesser sentence in order to "leave appellant standing convicted of the alternative offenses that are most commensurate with his culpability"].) Specifically, appellate courts simply vacate the section 288.5 charge, and recalculate a defendant's sentence based on the punishment already imposed by the trial court on the remaining counts.

However, we depart from *Torres*, *Rojas*, *Patton*, and other such cases because of the nuances in this matter. The jurors asked six questions during deliberations seeking clarification of different issues (one we discuss, *post*). They also asked for readback of witnesses. The relevance, implications, and meaning of these inquiries lead us to believe the trial judge who also heard the evidence, watched the witnesses testify, and observed the witnesses' demeanor, is in the best position to determine which offense or offenses would

11

"leave appellant standing convicted of the alternative offenses that are most commensurate with his culpability." (*Torres, supra*, 102 Cal.App.4th at p. 1059.)[6] Therefore, we remand this case to the trial court for a hearing on that question after which the trial court can decide which count or counts best describe Martinez's behavior based on the evidence received at trial. The court would then vacate the verdict(s) on the alternative count(s), dismiss that charge, or those charges, and conduct a complete resentencing. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances' "].)

## D. *Substantial Evidence Supports the Jury's Verdict on Count 5*

Martinez claims we must reverse his conviction on count 5, lewd act on a child "by use of force, violence, duress, menace, and fear of immediate and unlawful bodily injury," a violation of section 288, subdivision (b)(1) because insufficient evidence supported the jury's verdict. He specifically denies he used force, fear, or duress during the assault. We disagree.

### 1. *Standard of Review*

" 'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " (*People v. Veale* (2008) 160 Cal.App.4th 40, 45

---

6      We take no position on that issue.

12

(*Veale*).)  It is not our job to reweigh witness credibility or the evidence. (*People v. Navarro* (2021) 12 Cal.5th 285, 302; *People v. Lee* (2011) 51 Cal.4th 620, 632.)

2. *The Definition of Duress in Section 288, Subdivision (b)(1)*

The trial court instructed the jury that count 5 related to the incidents when Martinez made Doe touch his penis with her hand.

" ' "Duress" ' " as used in section 288, subdivision (b)(1), " 'means a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted.' " (*People v. Leal* (2004) 33 Cal.4th 999, 1004, italics omitted; CALCRIM No. 1111.)  "[D]uress is measured by a purely objective standard . . . .  [T]he focus must be on the defendant's wrongful act, not the victim's response to it." (*People v. Soto* (2011) 51 Cal.4th 229, 246.)

In determining whether a sexual offense was accomplished by duress, the trier of fact must consider the totality of the circumstances, including the victim's age and relationship to the defendant.  (*People v. Barton* (2020) 56 Cal.App.5th 496, 518; see CALCRIM No. 1111.)  " 'Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim' is relevant to the existence of duress." (*People v. Senior* (1992) 3 Cal.App.4th 765, 775 (*Senior*).)

13

### 3. *Substantial Evidence Supports the Jury's Verdict on Count 5*

On the record before us we conclude substantial evidence supports the jury's finding on count 5 that Martinez used duress to commit the sexual offense against Doe.[7]

At trial, the evidence established Martinez, who was not only an adult but a father figure to Doe at the time of the molestations, occupied a position of dominance and authority over the seven-year-old child. Doe testified Martinez would tell her mother to discipline her if she acted out and her mother complied. This evidence supports the inference that Martinez also could discipline Doe if she refused to acquiesce when he sexually abused her.

In addition, Doe testified that in connection with count 5, she was "really scared," "terrified," and did not know what was going to happen to her when Martinez grabbed her hand, placed it on his penis, and moved it up and down. Doe felt too scared to tell anyone what Martinez did, including her own mother, because she feared disrupting the family and her mother's relationship with Martinez. Doe also believed her mother would not protect her from Martinez because she did nothing in 2005 after an older girl molested Doe, and she did nothing when Martinez made sexual comments about Doe's body in front of her.

Where a defendant occupies a father-figure role over a young child, multiple cases have found duress in situations lacking force, violence, or threats. (See *Veale*, supra, 160 Cal.App.4th at pp. 46–47 [although stepfather

---

7    Because there is substantial evidence of "duress," we deem it unnecessary to address whether Martinez used "force" or "fear" in committing count 5. (See *Senior*, *supra*, 3 Cal.App.4th at pp. 774–775 [concluding "force" was not present when defendant committed the oral copulations and digital-vaginal penetrations on his minor daughter, but there was sufficient evidence of duress to support defendant's conviction for these offenses].)

14

who molested seven-year-old girl did not use violence or explicit threats, evidence supported a finding of duress based on "the disparity between [the victim] and defendant's age and size," the "defendant's position of authority in the family," and that the victim feared defendant and believed he would kill her or her mother if she told about the molestation]; *People v. Cochran* (2002) 103 Cal.App.4th 8, 15–16 (*Cochran*) [duress present in father's molestation of his nine-year-old daughter despite absence of violence or threats where the victim was a "vulnerable and isolated child who engaged in sex acts only in response to her father's parental and physical authority," and "[h]er compliance was derived from intimidation and the psychological control he exercised over her"], disapproved on another ground [victim's consent is not a defense to crime of aggravated lewd acts on child under 14] in *People v. Soto, supra,* 51 Cal.4th 229; *Senior, supra,* 3 Cal.App.4th at p. 775 [father's molestation of his fourteen-year-old daughter included duress because "several psychological pressures related to his molestations" including the fact he was the victim's father and an authority figure to her].)

Considering the totality of the circumstances here, we conclude substantial evidence supports the finding that Martinez used his position as a father figure with authority over seven-year-old Doe to manipulate and coerce her into putting her hand on his penis. (See *Veale, supra,* 160 Cal.App.4th at pp. 46–47; accord, *Cochran, supra,* 103 Cal.App.4th at p. 16, fn. 6 [noting that "as a factual matter, when the victim is as young as [nine years old] and is molested by her father in the family home, in all but the rarest cases duress will be present"].) We reject this claim of error.

### E. The Court Did Not Abuse its Discretion When Answering the Jury's Question on Sexual Penetration

Martinez next requests we reverse his conviction on count 2, claiming the trial court abused its discretion when responding to the jury's question on

the definition of sexual penetration in connection with counts 1 and 2.[8] We are not persuaded.

### 1. Standard of Review

"We review for an abuse of discretion any error under section 1138.[9]" (*People v. Eid* (2010) 187 Cal.App.4th 859, 882 (*Eid*).) "Section 1138 error due to the trial court's failure to adequately answer the jury's question is subject to the prejudice standard of *People v. Watson* (1956) 46 Cal.2d 818, 836, i.e., 'whether the error resulted in a reasonable probability of a less favorable outcome.' " (*People v. Hodges* (2013) 213 Cal.App.4th 531, 539 (*Hodges*).) "In this context, 'reasonable probability' means ' "merely a reasonable chance, more than an abstract possibility," of an effect of this kind.' " (*Eid,* at p. 882, italics omitted.)

### 2. The Jury Note

During deliberations the jury sent a note to the trial court which asked: "Provide an exact definition of sexual penetration. Does 'sexual penetration' occur if a body part simply moves through or separates the labia major [sic], the labia minora, or the butt cheeks?"

---

8    In count 1 the jury convicted Martinez of the lesser offense, attempted sexual penetration, a violation of sections 664 and 288.7, subdivision (b). Consequently, Martinez seeks reversal of count 2, not count 1.

9    Section 1138 states: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."

In response, the court wrote: "Sexual penetration is defined in Jury Instruction 1128 as penetration, however slight, of the genital or anal opening of the other person by any foreign object, substance, instrument, device, or any unknown object for the purpose of sexual abuse, arousal, or gratification. Penetration of the genital opening refers to penetration of the labia majora."

### 3. *The Court Properly Responded to the Jury Note*

"When a jury asks a question after retiring for deliberation . . . 'the court [has] a duty to provide the jury with information the jury desires on points of law.' (*People v. Smithey* (1999) 20 Cal.4th 936, 985.) . . . '[T]he court has discretion . . . to determine what additional explanations are sufficient to satisfy the jury's request for information.' " (*Eid, supra*, 187 Cal.App.4th at pp. 881–882; *People v. Beardslee* (1991) 53 Cal.3d 68, 97 (*Beardslee*).)

Martinez concedes the trial court's response to the jury note correctly stated the law. (See *People v. Quintana* (2001) 89 Cal.App.4th 1362, 1364, 1371 ["we hold that the . . . section 289, subdivision (k)(1) definition of 'sexual penetration' as 'penetration, however slight, of the genital . . . opening[]' refers to penetration of the labia majora, rather than penetration of the vagina"].) Yet, he argues the court committed prejudicial error and his conviction on count 2 should be reversed because it is not clear whether the jurors understood the terms labia majora and labia minora. In support, he notes the jury received no testimony, diagrams, or explanation about female genital anatomy during trial. Nor did Doe use a diagram during her forensic interview, or at trial, to point out anatomically where Martinez molested her. Martinez argues therefore, the court should not have responded to the jurors' question using terms not discussed or explained during testimony because the court lacked information about whether jurors used or applied the terms

17

correctly. Further, Martinez asserts that "given the almost identical, albeit inconsistent statements about" count 1 and count 2, the court's response confused the jury causing very different verdicts: Attempted sexual penetration in count 1 and completed sexual penetration in count 2. We disagree.

First, the jury's question to the trial court showed it knew the physical distinction between labia majora and labia minora. The jury specifically requested clarification on whether separating the labia majora, labia minora, or the butt cheeks qualified as sexual penetration under the law. The jury would not use terms in its question that it did not understand.

Second, the jury's verdicts on count 1 and count 2 do not suggest the jury was confused by the terms: labia majora and labia minora. Rather, the different verdicts reflect that counts 1 and 2 involved entirely distinct instances involving section 288.7, subdivision (b) violations. We observe that in a separate note to the court, the jury requested clarification regarding which incidents counts 1 and 2 reflected. The court responded count 1 involved sexual penetration of Doe on the couch and count 2 involved sexual penetration of her during "movie nights." Regarding the former, Doe testified Martinez touched the "outside" of her vagina. Specifically, she testified Martinez "didn't put his fingers inside me. It was just on the outside. It went under my underwear, and that's how." Regarding the latter, Doe testified Martinez touched her in the "inner-outside" area and "the inside part" of her vagina. Given the child's differing testimonies regarding the two molestations, the jury reasonably convicted Martinez on count 2 and the lesser included offense on count 1.

Third, even if the jury did not understand the physical distinction between labia majora and labia minora, Martinez is unable to show any

18

resulting prejudice. (See *Beardslee, supra,* 53 Cal.3d at p. 97; *People v. Lua* (2017) 10 Cal.App.5th 1004, 1017; *Hodges, supra,* 213 Cal.App.4th at p. 539.) Substantial evidence supported finding Martinez sexually penetrated Doe during movie nights. As the trial court properly instructed the jury, sexual penetration means "penetration, however slight, of the genital or anal opening of the other person . . . ." Based on Doe's testimony, regardless of whether the jury fully understood the difference between labia majora and labia minora, any reasonable jury could conclude that Martinez's act of rubbing the "inner-outside" and the "inside" part of Doe's vagina constituted "penetration, however slight, of the genital or anal opening."

Moreover, the fact that the jury convicted Martinez of the lesser included offense of attempted sexual penetration on count 1 demonstrates the jury was able to distinguish between "just on the outside" versus the "inner-outside" and the "inside" part when differentiating guilt on count 1 as opposed to count 2. Accordingly, even without the alleged error in the trial court's jury question response, it is not reasonably probable that a more favorable outcome for Martinez would result. (See *Beardslee, supra,* 53 Cal.3d at p. 97; *Lua, supra,* 10 Cal.App.5th at p. 1017; *Hodges, supra,* 213 Cal.App.4th at p. 539.)

We conclude the trial court did not abuse its discretion when it gave a correct statement of law in response to the jury's question, using the same language employed by jurors. Separately, Martinez is unable to show any resulting prejudice from the trial court's response to the jury note. We affirm Martinez's conviction on count 2.

## IV. DISPOSITION

The judgment is reversed to allow the trial court to hold a hearing regarding on which count(s) to sentence Martinez, and the alternative charge(s) to dismiss.  In all other respects, the judgment is affirmed.


RUBIN, J.

WE CONCUR:


McCONNELL, P. J.


KELETY, J.